## HERKNESS v. IRION et al.

(District Court, E. D. Louisiana. March 6, 1926.)

No. 18272.

1. **Courts ⬚262(2)—Suit to restrain conservation commissioner from interfering with manufacture of carbon black from natural gas held not mantainable in federal court, since plaintiff had an adequate remedy at law in state courts (Act La. No. 252 of 1924; Judicial Code, § 266 [Comp. St. § 1243]').**

Suit for mandatory injunction to restrain conservation commissioner of Louisiana and Attorney General, acting under Act La. No. 252 of 1924, from interfering with plaintiff's erection of factory and manufacture of carbon black from natural gas, wherein it was not alleged that act of denying permits adopted by commissioner was unconstitutional, *held* not within court's jurisdiction, under Judicial Code, § 266 (Comp. St. § 1243), since plaintiff had an adequate remedy at law in state courts.

2. **Mines and minerals ⬚47.**

Gas under land is not susceptible of ownership until reduced to possession, and does not belong to owner of land.

3. **Mines and minerals ⬚86.**

Extraction and use of natural gas is subject to state regulation, and even complete restriction or suppression.

4. **Courts ⬚299—Though unconstitutionality of statute is not pleaded, federal court may enjoin enforcement of unconstitutional order of state officer thereunder (Judicial Code, § 266 [Comp. St. § 1243]).**

Under Judicial Code, § 266 (Comp. St. § 1243), court has jurisdiction to determine whether enforcement of alleged unconstitutional order of state officer should be enjoined, despite fact that unconstitutionality of statute under which officer acted was not pleaded.

5. **Courts ⬚284.**

Federal court is concerned only when statute or administrative order of state officer violates federal Constitution.

6. **Courts ⬚265.**

Federal courts have no jurisdiction of original action for mandamus, except as ancillary remedy in aid of jurisdiction previously obtained.

7. **Mandamus ⬚1.**

Mandamus is essentially and exclusively a legal remedy, unknown to courts of equity.

8. **Courts ⬚303(2)—Suit to restrain threatened criminal proceedings by state officers for erection of factory to use natural gas without a permit, in violation of statute, held in excess of court's jurisdiction (Act La. No. 252 of 1924; Judicial Code, § 265 [Comp. St. § 1242]; Const. Amend. 11).**

Suit to restrain Louisiana conservation commissioner and Attorney General from instituting threatened criminal proceedings for intended erection of factory and manufacture of carbon black from natural gas without permit, in alleged violation of Act La. No. 252 of 1924, on ground, not that statute was unconstitutional, but that alleged wrongful construction or misapplication of it in refusal of permit amounted to a deprivation of property without due process and denial of equal protection of law, *held* in excess of court's jurisdiction, under Judicial Code, § 265 (Comp. St. § 1242), prohibiting injunction to stay proceedings in state court, and in view of Const. Amend. 11.

9. **Courts ⬚303(2).**

In view of Judicial Code, § 265 (Comp. St. § 1242), only criminal proceedings under void law or ordinance may be enjoined by federal courts.

10. **Courts ⬚303(2)—Suit to enjoin officers' enforcement of valid statute is against state, but otherwise if statute is unconstitutional (Const. Amend. 11).**

If state officers threatening criminal prosecution are proceeding under valid statute, a suit to enjoin them is a suit against state, within Const. Amend. 11; but, if statute be unconstitutional, they act as individual wrongdoers, and suit to enjoin them is not against state.

11. **Constitutional law ⬚278(1).**

Statute or ordinance is not violative of Const. Amend. 14, § 1, merely because it deprives one of his liberty or property.

12. **Constitutional law ⬚212.**

Whether classification under police power rests on reasonable public policy and has substantial relation thereto is test of its validity.

13. **Evidence ⬚83(1).**

Every presumption is in favor of rightful exercise of power by Legislature and officers acting under its authority.

In Equity. Suit by J. Smylie Herkness against Vanentine K. Irion and others. Bill dismissed.

Esmond Phelps (of Spencer, Gidiere, Phelps & Dunbar), of New Orleans, La., Harry H. Russell, of Monroe, La., and Saul, Ewing, Remick & Saul, of Philadelphia, Pa., for plaintiff.

Percy Saint, Atty. Gen., of Louisiana, and Edward Rightor, of New Orleans, La., for defendants.

Before FOSTER, Circuit Judge, and GRUBB and BURNS, District Judges.

BURNS, District Judge. Complainant, a citizen of Pennsylvania, alleges himself to be the owner of certain land, gas rights, and wells in the parishes of Morehouse and Ouachita, Louisiana, valued at more than $200,-000, acquired in June, 1925, for the purpose of producing natural gas and manufacturing it into carbon black.

On October 29, 1925, he filed with the defendant commissioner of the department of conservation a formal application for a permit to erect a factory for such manufacture of carbon black, which was refused by a letter stating that, in accordance with a previous conversation with plaintiff's agent, the matter had been submitted for an opinion of the Attorney General of Louisiana as to the power and authority of the commissioner of conservation under the state law. The commissioner's letter inclosed a copy of the Attorney General's opinion. The letter also recited that the application was denied, and further that:

"It has been the policy of this department to curtail rather than increase the consumption of natural gas for the purpose mentioned. It would therefore be folly for me to sanction the erection of additional plants under such circumstances."

It appears that, by various acts of the Louisiana Legislature since the discovery and development of the oil and gas fields of Morehouse and Ouachita parishes, the general regulation of gas production and use has been extended with increasing restrictions, placing the administration thereof in the department of conservation and under the direction of the conservation commissioner, who, since the year 1924, has issued no permits for the building of carbon black plants. He had then proclaimed publicly that he would issue no new permits and that those permits already issued would not be renewed. In the face of this declared policy, the complainant alleges that he acquired the property in question in 1925 with a view to creating a factory and manufacturing carbon black. He further alleges that the property "is without substantial value except for the purpose of producing natural gas and manufacturing it into carbon black."

The complainant contends that the commissioner of conservation was not delegated the power, by the statutes of Louisiana, to enforce a rule prohibiting any persons from engaging in the manufacture of carbon black who were not so engaged at the time of the adoption of such rule, particularly since the statutes authorize the manufacture of carbon black, and therefore any and all persons may so engage at any time, upon compliance with the provisions of law and the lawful regulations of the conservation commissioner, as he intends doing; that, if the statutes are construed as delegating such power to the conservation commissioner, then such laws are in violation of the Louisiana Constitution, which prohibits the delegation of legislative power to commissioners, boards, and executive officers generally, and prohibits deprivation of property without due process of law, and also section 1 of the Fourteenth Amendment to the Constitution of the United States, likewise prohibiting a state from depriving a person of property without due process of law, or denying to any person equal protection of the law; that the inevitable effect of the rule adopted by the conservation commissioner is to create a monopoly in favor of those now engaged in the manufacture of carbon black, by a wrongful discrimination between that class already so engaged and those who may, in future, desire to so engage, prohibiting the latter class from engaging therein. There is no suggestion that, as between all of the latter class, there is any discrimination.

The substantial complaint is that the respondent conservation commissioner, who has refused complainant and all others a permit for a new factory, and the Attorney General of Louisiana, will, unless enjoined, institute criminal proceedings against him, or any other person engaging in such manufacture without a permit, under Act 252 of the General Assembly of Louisiana of the year 1924, which provides that the commissioner may issue such permits, and any persons operating without same shall be guilty of a misdemeanor, punishable by a fine of not less than $100 or more than $10,000 for each day such manufacture shall continue. There is no suggestion that the complainant has been deprived, as owner, of the complete dominion of his land, nor of the right to mine, drill, or otherwise extract gas from the wells thereon, or to dispose of it for fuel or lighting, or for industrial or other purposes, as freely as any other owner of such lands and gas wells and of gas reduced to possession.

It is not alleged that the act of the Louisiana Legislature, No. 252 of 1924, is unconstitutional, and therefore void, either under the Constitution of the state or of the United States, or that such an order has been made by the conservation commissioner, acting under the statute, as would confiscate or deprive him of a property right before judicial re-

view, and therefore would justify the interference of this court by issuing an injunction. The relief prayed for is that the commissioner and the Attorney General be enjoined (1) from interfering with the erection of a factory by complainant, and with the subsequent manufacture of carbon black therein; (2) from instituting any suit, civil or criminal, against complainant, by which to penalize him or interfere with such erection of a plant and manufacture.

[1] No proceedings have been filed in the state courts, either by complainant seeking relief to compel the issuance of a permit, or by the Attorney General charging an offense under the statute. Under these circumstances it is important to determine whether the case is one substantially within the jurisdiction of this court, and properly brought within the purview of section 266 of the Judicial Code (Comp. St. § 1243).

[2, 3] The owners of land do not own the gas lying below it. Such gas is not susceptible of ownership until reduced to possession. Its extraction and use is subject to regulation, or even complete restriction or suppression, by the state. Frost-Johnson Lumber Co. v. Salling's Heirs, 91 So. 207, 150 La. 756; Bodcaw v. Cox (La.) 106 So. 213; Walls v. Midland Carbon Co., 41 S. Ct. 118, 254 U. S. 300–323, 65 L. Ed. 276. If we should assume that the general unwritten policy or rule of the conservation commissioner, denying permits generally, or that his letter, denying a permit to plaintiff, amounts to an order of an administrative board of the commission, acting under and pursuant to a state statute, within the meaning of section 266 of the Judicial Code, this finding would, of itself, not give the court jurisdiction, because section 266 merely prescribes a method of procedure. Wadley S. R. Co. v. Georgia, 35 S. Ct. 214, 235 U. S. 651, 661, 59 L. Ed. 411.

[4] It is equally true that, if the unconstitutionality of such an order was well pleaded, this court would have jurisdiction and owe a duty to try the question whether a preliminary injunction should issue, despite the fact that the unconstitutionality of the statute is not pleaded. Oklahoma Gas Co. v. Russell, 43 S. Ct. 353, 261 U. S. 293, 67 L. Ed. 659.

[5] Of course, the unconstitutionality of either the statute or an administrative order, under the state Constitution, does not concern this court, which is concerned only with violations of the federal Constitution. Cook v. Burnquist (D. C.) 242 F. 321. If the granting of a permit is not discretionary with the conservation commissioner, but a ministerial duty he owes under the statute, then plaintiff's right to a judicial review by mandamus proceedings would be plain, adequate, and complete. Section 267, Judicial Code (Comp. St. § 1244). If it is discretionary, and the commissioner has mistaken or exceeded his authority, and this results in a prosecution for a misdemeanor, this fact is available as a complete defense. Such judicial review would not be merely nominal and illusory, because the plaintiff is not at the risk of having to pay confiscatory penalties pending a determination of the validity of the order.

[6] If it be said that such remedies at law in the state courts are not adequate, because the remedy at law to be considered must be one within the federal court, where jurisdiction in equity is sought, we are then confronted with the fact that the federal courts have no jurisdiction of an original action to issue a mandamus, except as an ancillary remedy in aid of its jurisdiction, otherwise previously obtained, even though the relief sought concerned a right secured by the Constitution. See Covington & Cincinnati Bridge Co. v. Hager, 27 S. Ct. 24, 203 U. S. 109, 51 L. Ed. 111, holding: "We deem it settled beyond controversy, until Congress shall otherwise provide, that Circuit [District] Courts of the United States have no power to issue a writ of mandamus in an original action brought for the purpose of securing relief by the writ, and this result is not changed because the relief sought concerns an alleged right secured by the Constitution of the United States."

Whilst the complainant prays in terms for a mandatory injunction, restraining the commissioner and the Attorney General from interfering with the erection of a factory, and the subsequent manufacture of carbon black therein, this prayer is, in effect, equivalent to one for the issuance of a writ of mandamus to compel the conservation commissioner to submit to the erection of the factory in question and the manufacture of carbon black, thereby accepting the judgment of this court in lieu of the permit provided for by the statute. See Warner Valley Stock Co. v. Smith, 17 S. Ct. 225, 165 U. S. 28–33, 41 L. Ed. 621; Creager et al. v. Bryan, County Judge, et al. (D. C.) 287 F. 362.

[7] The remedy by mandamus is essentially and exclusively a legal remedy and is unknown to courts of equity. Assessor of Vernon Parish v. Gould (C. C. A. 5th Circuit) 210 F. 894, 127 C. C. A. 553. If, therefore, the remedy is by mandamus, and plaintiff has

a remedy at law afforded him by a statute of Louisiana, the case might properly be transferred to the law side of the court, and there be proceeded with under the terms of equity rule No. 22, since the jurisdiction here is sought upon a diversity of citizenship and an alleged federal question, except for the fact that United States courts have no jurisdiction in original cases of mandamus. 8 Encyc. U. S. Supreme Court Reports, 20.

[8] The second prayer of the bill is in no better case. The prayer amounts to no more than that this court, as a court of equity, may competently intervene to restrain threatened criminal proceedings for the alleged violations of a statute alleged to be valid and constitutional, upon the ground that such proceedings, by a misapplication of the statute, may work an injury to complainant's proposed business. This the courts of the United States are forbidden to do. Section 265 of the Judicial Code (Comp. St. § 1242) specifically prohibits injunctions to stay proceedings in state courts: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." The exceptional cases in which a court of equity is justified in interposing its restraining arm to prevent criminal prosecution are stated in Re Sawyer, 8 S. Ct. 482, 124 U. S. 200, 31 L. Ed. 402, Davis & Farnum v. Los Angeles, 23 S. Ct. 498, 189 U. S. 207, 47 L. Ed. 778, and Dobbins v. Los Angeles, 25 S. Ct. 18, 195 U. S. 223, 49 L. Ed. 169.

[9] From these decisions it appears well settled that, in cases only where property rights would be destroyed, criminal proceedings under a void law or an ordinance may be reached and controlled by a court of equity. In this case these necessary elements are not present in the bill, and the sole injury or loss to the complainant would be such only as might arise from his arrest and prosecution. His bill clearly shows that he anticipates only some action by a state officer under a penal statute, by reason of a wrongful construction of same.

[10] If the state officers sought to be enjoined are proceeding under a valid statute of the state, they represent the state, and a suit to enjoin them is a suit against the state, within the meaning of the Eleventh Amendment to the Constitution. On the other hand, if the proceedings are to enforce an unconstitutional statute or ordinance, the persons seeking to enforce it on behalf of the state are not considered as representing the state, but act as individual wrongdoers, and a suit to enjoin them is therefore held not to be a suit against the state. Central Consumers' Co. of New Jersey v. Austin (D. C.) 238 F. 619.

"If the statute is conceded to be valid, a federal court of equity has no more right to interfere with the enforcement of the state's criminal laws by its law officers, through its courts, because of anticipated errors in the construction of the statute by the judge, than it would have to interfere because of anticipated errors in the decision of facts by a jury." Id. See, also, Hoffman v. McElligott, 259 F. 525, 170 C. C. A. 487.

The contention of complainant that his deprivation of the permit amounts to a deprivation of his property without due process of law, and denies him the equal protection of law, does not sufficiently show that the refusal of a permit made any distinction between himself and any other persons who have been so denied since the adoption of the commissioner's policy or rule. Should we concede that the denial of this permit amounted to à deprivation of property, it would not follow that the rule or policy of the commissioner was contrary to the Fourteenth Amendment. In Grainger et al. v. Douglas Park Jockey Club (C. C. A. 6th) 148 F. 513, 78 C. C. A. 199, 8 Ann. Cas. 997, it was held that the constitutionality of a statute must be determined by its provisions and not by the manner in which it is in fact administered.

[11–13] A statute or ordinance depriving one of his liberty or property is not in violation of the Fourteenth Amendment merely because of such deprivation; nor is every classification made under the police power of a state voidable therefor. The test is that, to be valid, they rest upon some reasonable public policy and some real and substantial relation to the object sought to be accomplished; and every presumption is in favor of the rightful exercise of its power by the Legislature or officer acting under its authority.

From these considerations it follows that the complainant's bill must be dismissed.