BRISCOE v. BOYLE et al., Judges of Election.
(No. 7670.)

(Court of Civil Appeals of Texas. San Antonio. July 2, 1926. Rehearing Denied July 3, 1926.)

1. Elections ⊕⟶126(4).

All persons qualified to vote in general elections can participate in party primary elections, except those excluded by express provisions of statute.

2. Elections ⊕⟶121(1).

Political parties must conform with rules affecting them which are laid down in detail by Legislature concerning primary elections and the qualifications of voters thereat.

3. Elections ⊕⟶121(1)—Party executive committee held unauthorized to require voter in primary to make affidavit that he did not aid any other political party in last general election (Rev. St. 1925, art. 3110).

County Democratic executive committee *held* unauthorized to require voter in primary to make affidavit that he did not vote for, or give aid, support, or comfort to, any other political party in last general election, in view of Rev. St. 1925, art. 3110, prescribing test.

Appeal from District Court, Uvalde County; L. J. Brucks, Judge.

Suit for injunction by Dolph Briscoe against J. M. Boyle and others, as presiding judges of election. From an order denying the injunction, plaintiff appeals. Reversed, and injunction granted.

Ditzler H. Jones, of Uvalde, and Guy S. McFarland, Will A. Morriss, and Will A. Morriss, Jr., all of San Antonio, for appellant.

R. J. Noonan, of Hondo, and W. B. Teagarden and B. W. Teagarden, both of San Antonio, for appellees.

SMITH, J. As a preliminary to the holding of the party primary election on the fourth Saturday in July of the current year, the county democratic executive committee of Uvalde county adopted a—

"resolution and order providing a purported test for voters offering to vote in the forthcoming primary election aforesaid, whereby such voters might, and shall, be required to meet and possess and to manifest by affidavit the following test and to possess the following qualifications in addition to the qualifications of citizenship and payment of poll tax or exemptions from poll tax, and in substance and effect as follows, to wit:

" 'My vote having been challenged on the ground that I voted for, gave aid and support and comfort to a political party other than the Democratic party at the last general election, and having been duly sworn, I now declare under oath that I did not vote, give aid, support or comfort to any political party and its nominees, other than the Democratic party and its nominees in the last general election; and I further declare that I will support the nominees of this party at the next general election.

" '————, Voter.

" 'Subscribed and sworn to before me, this the ——— day, of A. D. 1922.

" '————, Presiding Judge, Precinct No. ———.' "

Dolph Briscoe, a qualified voter in said county, acting for himself and others similarly situated, brought this action against J. M. Boyle and thirteen others constituting the presiding judges designated by the county executive committee to hold the forthcoming primary election in the several precincts of said county, and prayed for a temporary injunction restraining said election judges from observing and enforcing the authority and instructions contained in said resolution. Upon a hearing in chambers after notice, the district judge denied the temporary injunction, and Briscoe has appealed.

[1] From the agreed facts in the case it appears that appellant and those for whom he acts voted in the Democratic primaries in Uvalde county in the year 1924, but in the ensuing general election voted against the person nominated for Governor in that primary, and for the nominee of another party for that office. In other words, appellant concedes that, although he voted in the Democratic primaries in 1924 under an express pledge to support the nominees of those primaries, he disregarded that pledge in its application to the nominee for Governor by voting against that nominee and for the nominee of another party. Appellees contend that, because of this violation of that pledge in 1924, appellant and those for whom he acts have not come into court with clean hands, and are therefore not entitled to the relief prayed for. And appellees further contend that the action complained of is a mere party regulation, and therefore political, and that the courts should not interfere therewith. The statutes governing primary elections do not expressly limit the qualifications of electors entitled to vote in such elections, except to exclude negroes from participating in "Democratic primary elections," and except by general terms to confine the right of suffrage to members of the particular party in whose primaries they offer to participate. The true spirit of election laws is to extend the right of suffrage to all persons normally entitled to that right, and not disqualified or rendered ineligible by express provisions. In this state the qualifications of persons entitled to vote in general elections are fixed by the Constitution, and, except those excluded by express restrictive provisions in the statutes, all persons qualified to vote in general elections are entitled to participate in party primary elections.

The only restrictions imposed upon such

⊕⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

persons by the statute is that against negroes, and the general provision and purpose of the law to limit the voters to participation in the primaries of their respective parties. Before the legislative department invaded the province of party government, and assumed control and regulation of party machinery, the right to say who should and who should not participate in party affairs was exercised by the party governments, with which the courts would not concern themselves.

[2] But the Legislature has taken possession and control of the machinery of the political parties of the state, and, while it permits the parties to operate that machinery, they do so only in somewhat strict accordance with the rules and regulations laid down in minute and cumbersome detail by the legislative body. The statute designates the official positions to be occupied in the parties, and, while it permits the members of the parties to select such officials, they can do so only in the manner prescribed by the statutes, which define the powers and duties of those officials, beyond which they cannot lawfully act. The statute prescribes the time, place, and manner of holding primary elections. It prescribes the forms of the ballots to be used, and the process by which the election officials shall identify and hand out the ballots and by which the voters shall mark and deposit the ballots when voted. It prescribes the declaration to be made by the voter, and the obligation to be assumed by him as a condition precedent to the validity of his ballot. In fine, the Legislature has in minute detail laid out the process by which political parties shall operate the statute-made machinery for making party nominations, and has so hedged this machinery with statutory regulations and restrictions as to deprive the parties and their managers of all discretion in the manipulation of that machinery.

[3] Among the restrictions placed upon the discretion of the parties and their managers is that of fixing the declaration of party fealty and the obligation of party support to be made and assumed by the voters seeking to participate in primary elections, as follows:

"No official ballot for primary election shall have on it any symbol or device or any printed matter, except a uniform primary test, reading as follows: 'I am a ...... (inserting name of political party or organization of which the voter is a member) and pledge myself to support the nominee of this primary;' and any ballot which shall not contain such printed test above the names of the candidates thereon, shall be void and shall not be counted." Rev. St. 1925, art. 3110.

By excluding negroes from participating in party primary elections, and by legislating upon the subject of the character and degree of party fealty required of voters participating in such elections, the Legislature has assumed control of that subject to the exclusion of party action, thus depriving the party of any power to alter, restrict or enlarge the test of the right of the voter to participate in party primaries. Gilmore v. Waples, 108 Tex. 167, 188 S. W. 1037. By this process the party primary elections are thrown open to all electors, other than negroes, who are qualified to vote in general elections, subject only to the moral restraint placed upon them by the declaration and pledge prescribed in article 3110; and that is a matter of honor and conscience determinable alone by the voters themselves. That pledge operates upon the present intention of the voter. If he considers himself a member of the party holding the election, and if he has a present intention to vote for the nominees selected at such election, he is entitled to vote therein, and by doing so he obligates himself to support such nominees at the ensuing general election. The law does not purport to measure his eligibility by his past political performances, but by his present intentions; not by what he has done or omitted to do in the past, but what he promises, and in honor obligates himself, to do in the immediate future. Westerman v. Mims, 111 Tex. 29, 227 S. W. 178.

It follows that party managers, executive committees, or election judges can exact of prospective voters no other test, declaration, or pledge than that prescribed by law, which is but an express declaration of the voter that he is a member of the party holding the election, and that he will support the nominees of that election. As a practical matter, the declarations and promise add but little to the obligation of the voter, for both should be implied from his act in participating in a party election, or convention.

The order of the court below denying the injunction is reversed, and the injunction granted as prayed for.

All concur.