**FRISCHER & CO., Inc., et al. v. ELTING.**
**No. 197.**

Circuit Court of Appeals, Second Circuit.

July 18, 1932.

Meyer Kraushaar, of New York City, for appellants.

George Z. Medalie, U. S. Atty., of New York City (Harry G. Herman, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The complainants-appellants who sought to import the articles containing synthetic phenolic resin assign error in the decree dismissing the bill of complaint on the ground that:

(1) Section 316 of the Tariff Act (19 USCA §§ 174–180) is unconstitutional because it constitutes an unlawful delegation of legislative power to the President.

(2) The findings of the Commission on which the President's order was based were unlawful (a) because not concurred in by a majority of its members; (b) because the Commission assumed to determine that the articles sought to be imported infringed patents of the Bakelite Corporation and that the infringements were of the class of "unfair acts" mentioned in section 316 (a) of the Tariff Act (19 USCA § 174).

(3) The bill should stand because there was ground for invoking jurisdiction of a court of equity in order to restrain a multiplicity of actions to enforce the bonds given for the temporary entry of the merchandise.

The contention that section 316 is unconstitutional because it delegates legislative power to the President is answered by such decisions as Buttfield v. Stranahan, 192 U. S. 470, 24 S. Ct. 349, 48 L. Ed. 525, Field v.

Clark, 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294, and Hampton, Jr., & Co. v. United States, 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624. By the last decision, section 315 (e) of the Tariff Act of 1922 (19 USCA §§ 154–159) was sustained as a proper delegation of power. This section authorized the President to increase or decrease duties so as to equalize differences which, upon investigation, he might find to exist between costs of production in this and in foreign countries. Certainly it is now well settled, if it ever was in doubt, that no person has a right to trade with foreign nations broad enough to limit the control of Congress over foreign commerce or to affect its power to determine what merchandise may be imported and upon what terms any right to import may be exercised. The only possible question about the validity of section 316 is whether Congress laid down an adequate standard for the President to apply, when it declared unlawful "unfair methods of competition and unfair acts in the importation of articles * * * or in their sale * * * the effect or tendency of which is to destroy or substantially injure an industry. * * *" The terms are general and vague, but the Federal Trade Commission Act, which has uniformly been recognized as valid, declared "unfair methods of competition in commerce" unlawful and directed the Commission "to prevent persons * * * from using" those methods. Federal Trade Commission Act, § 5 (15 USCA § 45); Federal Trade Comm. v. Gratz, 253 U. S. 421, 40 S. Ct. 572, 64 L. Ed. 993; Fed. Trade Comm. v. Eastman Kodak Co., 274 U. S. 619, 47 S. Ct. 688, 71 L. Ed. 1238. In similar vague terms the Shipping Board has been empowered to approve such agreements as it shall not find "unjustly discriminatory or unfair * * * or to operate to the detriment of the commerce of the United States. * * *" Congress could hardly have left the Shipping Board with more general powers or launched it with less definite sailing orders; yet its jurisdiction as a fact-finding body has been sustained in the broadest way. U. S. Nav. Co. v. Cunard S. S. Co., 281 U. S. 759, 50 S. Ct. 410, 74 L. Ed. 1169.

We can have no doubt that section 316, which empowers the President to determine what acts in the importation or the sale of imported articles are unfair and to determine under what conditions these subjects of unfair trade should be exported, is entirely valid, and we so hold.

In view of what we have already said, it is evident that Congress might have left to

the President the whole matter of excluding the merchandise in question because of unfair acts in connection with its importation or sale, or it might have left it to the Tariff Commission with or without a review by a legislative court like the Court of Customs and Patent Appeals or by a constitutional court. United States v. Ju Toy, 198 U. S. 253, 25 S. Ct. 644, 49 L. Ed. 1040. The question before us is what Congress actually did, and whether the President, when he directed the collector to export the merchandise, was acting within the terms of section 316 of the Tariff Act.

The "unfair acts" which are declared unlawful by the statute and are ordered to be dealt with as therein provided are those "*found by the President to exist.*" The Tariff Commission is brought on the scene "to assist the President in making * * * decisions." Under section 316 (e), 19 USCA § 178, the additional duties imposed upon articles imported in violation of the act are to be determined "whenever the existence of any * * * unfair method or act shall be established *to the satisfaction of the president,*" and, in case such additional duties will not offset the unfair acts and the President shall be "*satisfied*" that the unfair methods or acts have been extreme, he shall direct the articles to be excluded as he deems the interests of the United States require. It is evident from the foregoing that the President is given full power to determine what acts are unfair and injurious to industry. On the face of the statute, the Commission is only employed to "*assist* the President in making * * * decisions" and not to bind him. A review of their auxiliary findings by the Court of Customs and Patent Appeals is given as to "questions of law only," and provision is made for an appeal from the decision of that court to the Supreme Court upon certiorari. It seems most reasonable to suppose that the methods which the statute provides for determining whether an act is unfair and whether merchandise shall for that reason be excluded are the only methods which Congress intended to employ to enforce the statute. We realize that on the face of the statute the President is not bound by the recommendations of the Tariff Commission or by the findings of the Court of Customs Appeals or even by the decision of the Supreme Court should it grant a writ of certiorari, for all are in terms advisory. But it is hardly likely that Congress would have set up all this elaborate machinery and provided that the Court of Customs Appeals should review the Tariff Commission only as to matters of law if a suit was to be

permitted to test matters again in a constitutional court. The Supreme Court denied a writ of certiorari to the Court of Customs and Patent Appeals in respect to this very litigation. Whether it denied the writ because it declined to take up a case where it would be reviewing the Tariff Commission and the Court of Customs when they were acting only in an advisory capacity, and not judicially (United States v. Ferreira, 13 How. 40, 14 L. Ed. 42; Gordon v. United States, 117 U. S. 697, appendix), or whether it denied it as a pure matter of discretion, in any event the importers had a hearing both before the Commission, the Court of Customs and Patent Appeals, and the President, and exhausted their remedy before the Supreme Court as well. We think the statute contemplated no further remedy. Even if the President was not bound to follow the decision of his advisers in matters of law as to which the Court of Customs and Patent Appeals had given a decision, he would undoubtedly have done so. In view of the broad powers of Congress to deal with foreign importations, we think the remedy afforded was ample. It is therefore unnecessary for us to consider the question whether the majority of the Court of Customs and Patent Appeals properly held that sales by the complainants which infringed patents were "unfair acts" within the meaning of section 316, or whether Judge Garrett was right in his dissenting opinion. The Tariff Commission was given power to advise the President, and the legislative Court of Customs and Patent Appeals was authorized to review the findings of the Commission on questions of law. Ex parte Bakelite Corporation, 279 U. S. 438, 49 S. Ct. 411, 73 L. Ed. 789. The President's action taken pursuant to the decision of the latter under the provisions of section 316 we regard as final. This applies not only to the findings that the infringements of the patents constituted "unfair acts," but also to the finding that the imported articles were sold as "Bakelite" and must be labeled in such a way as to show that they were not made by the Bakelite Corporation.

There can be no doubt that a majority of the Tariff Commission could act for that body. So the Court of Customs and Appeals has held, Frischer & Co. v. Bakelite Corporation, 39 F.(2d) 247, and its decision was justified by the authorities. Cooley v. O'Connor, 12 Wall. 391, 20 L. Ed. 446; Merrill v. Lowell, 236 Mass. at page 467, 128 N. E. 862; National Prohibition Cases, 253 U. S. at page 386, 40 S. Ct. 486, 588, 64 L. Ed. 946. Any

other method of procedure would be awkward, if not impracticable.

 The part of the bill seeking to restrain actions to enforce the bonds given upon the temporary entry of the merchandise lacks equity. The mere fact that a large number of suits might be brought is not sufficient to give a court of equity jurisdiction. Mechanics' Ins. Co. v. C. A. Hoover Distilling Co. (C. C. A.) 173 F. 888, 32 L. R. A. (N. S.) 940; Scottish Union, etc., Ins. Co. v. J. H. Mohlman Co. (C. C.) 73 F. 66. Moreover the bonds ran to the United States, and the complainants are attempting to sue it without any statutory consent on its part and without even making it a party. Certainly a decree against the collector who would not be a party to any action to recover on the bonds would be "brutum fulmen."

The decree of dismissal is affirmed.