## WHITE v. COUNTY DEMOCRATIC EXECUTIVE COMMITTEE OF HARRIS COUNTY et al.

### No. 521.

District Court, S. D. Texas, Houston Division.
July 19, 1932.

Nabrit, Atkins & Wesley, of Houston, Tex., for complainant.

Charles E. Kamp, of Houston, Tex., for respondents.

KENNERLY, District Judge.

Alleging he is a believer in, professes the tenets of, and is a member of, the Democratic Party, is a natural born citizen of the United States, a qualified elector and voter under the Constitution and other laws of the United States and of the state of Texas, has resided in Harris county, Tex., for thirty-two years, and particularly for more than one year prior to the date fixed by law for the holding of the primary elections of the Democratic Party on the fourth Saturday in July, 1932, and on the fourth Saturday in August, 1932, and has paid his poll tax, and had issued to him, and has in his possession, his poll tax receipt for the year 1931, entitling him to vote in such primary elections, complainant, Julius White, a negro, brings his bill in equity against the Harris county Democratic executive committee and its chairman and secretary, alleging that such committee and such officers are seeking to deprive him of the right to vote, and prevent him from voting, in such primary elections, solely on the ground that he is a negro.

This is a hearing of such matter on respondents' pleading, which is construed to be and treated as a motion to dismiss under the equity rules. Also by agreement, and subject to such motion to dismiss, this is a hearing on the merits.

Complainant alleges that on May 24, 1932, the state convention of the Democratic Party in Texas passed a resolution[1] excluding all negroes, including complainant, from voting and participating in the Democratic Party primary elections to be held on the fourth Mondays in July and August, 1932, respectively. That on June 14, 1932, the state executive committee of the Democratic Party in Texas, acting under the authority of article 3107 of Texas Revised Civil Statutes of 1925 and amendments (Acts 40th Leg. [1927] 1st Called Sess., p. 193, c. 67 [Vernon's Ann. Civ. St. art. 3107]), declared said resolution to be valid to deprive complainant and all other qualified voters of the negro race of the right to vote in such primary elections, and that, on June 30, 1932, the respondents likewise declared said resolution to be valid to deprive complainant and all other qualified negro voters of the right to vote in such primary elections.

Complainant further alleges that respondents are, under the law, managers of such primary elections in Harris county, Tex., and that it is their duty to give instructions to the election judges of such primary elections in such county, concerning who are eligible to vote at such primary elections, and that complainant fears, believes, and charges that respondents will instruct such election judges that complainant, and other negroes similarly situated, are ineligible to vote, and to refuse to allow them to vote, and that they will not be allowed to vote, in such primary elections, and will be deprived of such right to vote, contrary to the Fourteenth Amendment to the Federal Constitution.

In other words, it is contended that re-

[1] This resolution is as follows: "Be it resolved, that all white citizens of the State, who are qualified to vote under the Constitution and laws of Texas shall be eligible for membership in the party and as such eligible for participation in the primaries."

spondents are not seeking, themselves or by their own independent action, to prevent complainant from voting in such primary elections, but that respondents are carrying out, or threatening to carry out, the resolution and action of such convention, and/or such state executive committee, and the question is whether such action by the convention, and/or by such state executive committee, will deprive complainant of his right to so vote in violation of the Fourteenth Amendment.

■ 1. The contention of complainant is upheld, and the controlling questions presented are disposed of, by the Supreme Court of the United States in the majority opinion of Mr. Justice Cardozo in Nixon v. Condon et al., delivered May 2, 1932, 52 S. Ct. 484, 76 L. Ed. 984. Such opinion leaves little to be said. Complainant insists that, while such resolution was passed by such convention, it was, in truth and in fact, the act of the state executive committee. If it was, and to the extent that it was, the act of the state executive committee, it indisputably violates complainant's rights under the Fourteenth Amendment, and must fall. Nixon v. Herndon, 273 U. S. 536, 47 S. Ct. 446, 71 L. Ed. 759; Nixon v. Condon, supra. If such resolution be the act of the convention, and such convention derives its powers to pass it from and under the laws of the state of Texas, such convention is an agency of the state, to the same extent the state executive committee is held to be an agency of the state (Nixon v. Condon, supra), and its action violates complainant's rights under the Fourteenth Amendment, and must fall. I see no escape from the conclusion that the powers exercised by the convention in passing such resolution were derived from the state of Texas, under and by virtue of such article.[2] This is particularly apparent when such article is read in the light of the other provisions of the Texas state law governing political parties, their organization, procedure, conventions, primary elections, etc. Chapters 13 and 14, title 50, Texas Revised Civil Statutes 1925, and amendments (Vernon's Ann. Civ. St. arts. 3100–3173).

■ Respondents, however, insist that the Democratic Party's power with respect to, and its convention's powers to pass, such resolution, are inherent, possessed long prior to the enactment of article 3107, and in no manner derived from the state of Texas. That this was true prior to the enactment of laws in Texas regulating political parties, etc., there is little, if any, doubt. That it is not true now is certain. For a period of more than twenty-five years, the Democratic Party in Texas has, from time to time, accepted grants of power from the state, surrendered its own inherent powers, and caused to be passed laws abridging its inherent powers, until, as was said in Briscoe v. Boyle (Tex. Civ. App.) 286 S. W. 275, 276, the party has little or no discretion in the management of its party affairs.[3] Unlike Moses, who refused to be known as the son of Pharaoh's daughter, the Democratic Party in Texas has, over a period of twenty-five years, chosen to be known as a child and agency of the state of Texas, abandoning its own inherent powers, and choosing to conduct its affairs under grants of power from the state.

It is only necessary to review the history of legislation in Texas, respecting political parties, Acts of 28th Legislature (1903) c. 101, §§ 82 to 107, p. 148, 12 Gammel's Laws of Texas; Acts of 29th Legislature (1905), 1st Called Sess., c. 11, §§ 102 to 195, p. 543, 12 Gammel's Laws of Texas; Texas Revised Civil Statutes 1911, articles 3084 to 3175 and amendments; Texas Revised Civil Statutes 1925, articles 3100 to 3173, and amendments (Vernon's Annotated Revised Civil Statutes of Texas, articles 3100 to 3173), and to review the decisions of the higher courts of

---

[2] Article 3107 reads as follows: "Every political party in this State through its State Executive Committee shall have the power to prescribe the qualifications of its own members and shall in its own way determine who shall be qualified to vote or otherwise participate in such political party; provided that no person shall ever be denied the right to participate in a primary in this State because of former political views or affiliations or because of membership or nonmembership in organizations other than the political party."

[3] "But the Legislature has taken possession and control of the machinery of the political parties of the state, and while it permits the parties to operate that machinery, they do so only in somewhat strict accordance with the rules and regulations laid down in minute and cumbersome detail by the legislative body. The statute designates the official positions to be occupied in the parties, and while it permits the members of the parties to select such officials, they can do so only in the manner prescribed by the statutes, which define the powers and duties of those officials, beyond which they cannot lawfully act. The statute prescribes the time, place, and manner of holding primary elections. It prescribes the forms of the ballots to be used, and the process by which the election officials shall identify and hand out the ballots and by which the voters shall mark and deposit the ballots when voted. It prescribes the declaration to be made by the voter, and the obligation to be assumed by him as a condition precedent to the validity of his ballot. In fine, the Legislature has in minute detail laid out the process by which political parties shall operate the statute-made machinery for making party nominations, and has so hedged this machinery with statutory regulations and restrictions as to deprive the parties and their managers of all discretion in the manipulation of that machinery."

Texas, construing such legislation, Love v. Wilcox, 119 Tex. 256, 28 S.W.(2d) 515, 523; Briscoe v. Boyle (Tex. Civ. App.) 286 S. W. 275; Koy v. Schneider, 110 Tex. 369, 218 S. W. 479, 221 S. W. 880; Westerman v. Mims, 111 Tex. 29, 227 S. W. 178; Walker v. Hopping (Tex. Civ. App.) 226 S. W. 146; Dewees v. Stevens, 105 Tex. 356, 150 S. W. 589; Mays v. Cobb, 100 Tex. 131, 96 S. W. 1079; Gilmore v. Waples, 108 Tex. 167, 188 S. W. 1037; Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699; Morris v. Mims (Tex. Civ. App.) 224 S. W. 587; Waples v. Marrast, 108 Tex. 5, 184 S. W. 180, L. R. A. 1917A, 253; Hamilton v. Munroe, 116 Tex. 153, 287 S. W. 306; Nicholson v. Scurry, 119 Tex. 250, 28 S.W.(2d) 512; Holzschuher v. Wurzbach (Tex. Civ. App.) 286 S. W. 289; Love v. Buckner (Tex. Sup.) 49 S.W.(2d) 125, to show this to be true. Add to this the provisions of the present laws, regulating in detail the affairs of political parties, and it becomes unanswerable that the convention passing this resolution was an agency of the state, in the same manner and to the same extent as the state Democratic executive committee. Nixon v. Condon, supra. The convention itself is a creation of a statute which fixes the time of its meeting, the purpose of its meeting, and prescribes in detail the manner of choosing those who participate therein. Article 3167, Texas Revised Civil Statutes 1925.

From what has been said, it follows that the resolution complained of by complainant violates complainant's rights under the Fourteenth Amendment, and is void as to him and to those similarly situated, and the acts of respondents in seeking, under and by virtue of said resolution, to prevent complainant from voting in such primaries, because he is a negro, are unlawful.

2. But is complainant entitled in this Court to the relief asked in his prayer?[4]

He prays in effect that respondents be enjoined from instructing the election judges to comply with and carry out such resolution, and from instructing the election judges to deny complainant the right to vote, and also prays that respondents be mandatorily required to permit complainant and all other qualified negro voters to vote in said primary elections, and mandatorily required to instruct all election judges to that effect. Clearly the crux of the matter is that complainant is asking a mandamus against respondents (who are themselves agencies of the state in carrying out the laws of the state) to require respondents, and in turn require respondents to require the election judges, to allow complainant to vote in such primaries. While this court has jurisdiction of the parties and the subject-matter, this court has no jurisdiction to grant a mandamus such as is prayed for here. Creager et al. v. Bryan (D. C.) 287 F. 362. Herkness v. Irion et al. (D. C.) 11 F.(2d) 386, 388. Fineran et al. v. Bailey (C. C. A.) 2 F.(2d) 363. Stevenson v. Holstein (C. C. A.) 30 F.(2d) 625, 626, and cases there cited.

3. There are other questions presented, including the question of whether complainant may maintain this suit without making the state Democratic executive committee a party (see Warner v. Smith, 165 U. S. 31, 17 S. Ct. 225, 41 L. Ed. 622), which I find unnecessary to decide.

The court having no jurisdiction to entertain complainant's bill, because of the nature of his prayer for relief, respondents' motion to dismiss is sustained. Let a decree be prepared accordingly.

---

[4] Complainant's prayer is as follows: "Wherefore, premises considered, plaintiff prays as follows: First, that subpoenas be directed to issue to the defendants requiring them and each of them to answer this bill of complaint; Second, that a temporary injunction be granted by the Court restraining and enjoining defendants and each of them (1) from enforcing or attempting to enforce the above quoted resolution of the State Democratic Convention of Texas, passed on May 24, 1932, and (2) from preventing or attempting to prevent plaintiff or any other legally qualified Negro voter from voting in said Democratic Primary elections to be held on said July 23, 1932, and August 27, 1932, or on other date or dates and mandatorily requiring defendants and each of them to permit plaintiff and all other qualified Negro voters to vote in said primary elections and mandatorily requiring defendants and each of them to instruct all election judges for said primary elections in Harris County, Texas, to permit plaintiff and all other legally qualified Negro voters to vote in said primary elections; and that upon final hearing, said injunction be made permanent. Third: that the plaintiff may have such other and further relief as in equity and justice he may be entitled to have."