### AMCHANITZKY v. CARROUGHER, Acting Postmaster.

No. 5732.

District Court, E. D. New York.

June 13, 1933.

Nathan Amchanitsky, of Brooklyn, N. Y., in pro. per.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and Emanuel Bublick, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for defendant.

BYERS, District Judge.

This is a motion for judgment dismissing the plaintiff's complaint (petition) under New York Rules of Civil Practice, rule 106, because (1) it appears from the face of the pleading that the court lacks jurisdiction of the subject-matter, and (2) that no cause of action is stated against the defendant.

The notice of motion asserts a special appearance for the purpose of the motion only.

In effect, the defendant offers what would have been called a demurrer under earlier practice, but why that must be poised upon a special appearance where lack of jurisdiction over the person is not relied upon is not made to appear.

If the defendant's contentions are sound, it would seem that his arguments must proceed from a general appearance, and his presence in court will be so construed in order that there may be a determination of the questions which he has presented.

The plaintiff is a civil service employee; namely, a substitute letter-carrier, and has been since September, 1927. He performed 49 hours of labor between April 1st and 15th, 1933, and the compensation fixed by Congress in 1925 was at the rate of 65 cents per hour, which would have entitled him to receive, after certain deductions not now important, the sum of $30.84.

He was offered and declined to accept, in lieu thereof, $26.07, which is said to be 15% less than the sum to which he was entitled.

It is conceded that the reason for this is the so-called "Economy Act" of Congress, being Public Act No. 2 of the 73rd Congress, approved March 20, 1933 (see 5 USCA § 673 note), providing generally for the reduction of Federal employees' salaries, and the Executive Order dated March 28, 1933, declaring the said reductions effective, for reasons therein stated.

The enactment affected salaries and compensation of Federal employees for the fiscal year to end June 30, 1934, and superseded Public Act No. 428 of the 72nd Congress, approved March 3, 1933 (see 5 USCA § 673 note), intended to have a like scope; the latter provided for a reduction in salaries and compensation, but excluded from its operation those employees in receipt of less than

$1,000.00 per year, or $83.33 per month. The plaintiff is in that category.

The theory of the action is that the "Economy Act" of the present Congress is unconstitutional and that the defendant, as acting postmaster, should have disregarded it for that reason, and have paid to the plaintiff, for his said services, the said sum which he would have received under the Public Act No. 506 of the 68th Congress (Act Feb. 28, 1925 [43 Stat. 1053]).

It should be stated that, under the "Economy Act", there is no exception recognized in favor of employees receiving less than $1,000.00 per year.

It will be seen that the plaintiff asserts that the defendant should be held at fault, not because he has failed to perform a ministerial duty in obedience to the clear mandate of the law, but because he has not construed the "Economy Act" to be unconstitutional, as the plaintiff thinks he should, and then proceeded to do something that an earlier law would have required.

In other words, the plaintiff seeks to mandamus the defendant into performing the judicial function of construing this Act as the plaintiff would have it construed, for that is the prayer of the petition.

That this court has no original jurisdiction to issue the writ of mandamus as an end in itself, appears alike from the statute conferring the power to issue writs, section 262, Judicial Code (28 USCA § 377), and from the cases in which the question has been examined. White v. County Democratic Executive Committee (D. C.) 60 F.(2d) 973, at page 975; Stevenson v. Holstein-Friesian Ass'n (C. C. A.) 30 F.(2d) 625, and cases therein cited.

It is clear therefore that the plaintiff cannot have the relief that he seeks in the form that his petition is drawn, but his case has been earnestly briefed, and his ultimate contention has not been lost to sight, even though summary disposition seems to be inevitable.

His argument is that the "Economy Act" is unconstitutional because the Congress therein delegated a legislative function to the Executive, in that the compensation of every officer or employee of the Government should be reduced in accordance with Executive Order, based upon a comparison of the cost of living as shown during the six months ended June 30, 1928, and the same period ended December 31, 1932; that is, if the said cost was lower during the second period, proportionate reductions were authorized, not to exceed fifteen per centum.

The act, in section 2 (b) (5 USCA § 673 note), directed that the compensation be reduced in accordance with section 3 of the act (5 USCA § 673 note), which prescribes the formula upon which the Executive Order is to be based, as above paraphrased.

The Executive Order promulgated March 28, 1933, recited the making of the investigation of the cost of living according to the method prescribed, and the results established, which showed a decrease in the cost of living of 21.7 per centum, which is in excess of the maximum reduction prescribed of 15 per centum, and hence the latter was adopted as the reduction in the affected compensations during the period from April 1, 1933, to June 30, 1933, inclusive.

Apparently the plaintiff contends that the unconstitutional element resides in the reference to the Executive to ascertain if there had been a reduction in the cost of living, in lieu of a Congressional investigation; and, in committing to the executive the authority to render the law operative provided the investigation should reveal the conditions which, in the view of Congress, would justify the reduction in stipend.

It is obvious that Congress had the power to order the reduction, without qualification or indirection of any kind; if this is so, it follows that the power was not diminished by the expedient of prefacing its exercise upon a finding of facts which would point to the expediency of making the reductions.

The mere substitution of investigation by the Executive for that by legislative agency cannot be thought to affect the nature of the function which brought about the result, which was initially legislative by the terms of section 2 (b) of the act.

If Congress had first requested the Executive to submit, for its information, the data which had been accumulated by the latter, and then passed a law reducing compensation by 15%, no question could have been made of the conventionality of such procedure. What was done was somewhat the reverse of that process, in that the reduction was ordered not to exceed a certain per cent. subject to the establishment of a prescribed factual hypothesis. This is thought to involve a question of legislative technique, rather than a constitutional issue into which this court might inquire.

The extent to which fact-finding may be committed by Congress to Executive agencies

and appropriate action taken pursuant to their conclusions, has been discussed most recently in Hampton & Co. v. U. S., 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624, and Frischer & Co., Inc., v. Elting (C. C. A.) 60 F.(2d) 711.

It is impossible to agree with the plaintiff's theory of this case upon the merits, and accordingly his contentions advanced to support the jurisdiction of the court will not be examined, for the obvious reason that agreement with them would lead to no constructive result; and disagreement with them might be thought to indicate an unwillingness to deal with the ultimate issue.

In the belief that the complaint or petition herein does not state facts sufficient to constitute a cause of action, the motion to dismiss will be granted upon that ground.

Settle order.