## HOOKLESS FASTENER CO. v. G. E. PRENTICE MFG. CO.

### No. 2133.

District Court, D. Connecticut.
July 28, 1932.

On Rehearing Sept. 29, 1932.

Fish, Richardson & Neave, of New York City (Charles Neave and Merrell E. Clark, both of New York City, R. S. Kelley, of Meadville, Pa., and Bristol & White, of New Haven, Conn., of counsel), for plaintiff.

Roberts, Cushman & Woodberry, of Boston, Mass. (Robert Cushman and Richard F. Walker, both of Boston, Mass., and Drury W. Cooper, of New York City, of counsel), for defendant.

HINCKS, District Judge.

This is a suit brought for the infringement of two letters patent, as follows: Patent No. 1,566,996, issued to one Sundback on December 22, 1925, upon an application filed May 8, 1923; and Patent No. 1,598,183, issued to one Whitney on August 31, 1926, upon an application filed March 30, 1925. The plaintiff relies upon claims 1 to 4, 6, 7, 8, 11, 12, 14, 16, 18, 19, 20, and 21 of the Sundback patent; and upon claims Nos. 1 to 6 of the Whitney patent; charging that two devices of the defendant (a specimen of each of which is in evidence as Plaintiff's Exhibits 7 and 8) infringed the Sundback patent, and that one of these two devices (Exhibit 8) also infringed the Whitney patent. The usual defenses of lack of patentable invention and anticipation are interposed. The defense of noninfringement also is addressed to the Sundback patent, but is not pressed, at least upon brief, with respect to the Whitney patent.

The parties are manufacturers of slide fasteners of the general type now commonly used upon various articles of clothing, overshoes, and luggage. The patents in suit relate only to that part of the fastener which is commonly called the slider, which by its movement in one direction closes the fastener by bringing into interlocking engagement the small metal fastener units set upon the opposing edges of the fabric, and which, when moved in the opposite direction, unlocks these fastener units, and thereby opens the fastener device.

### Sundback Patent.

The Sundback patent in suit discloses a slider made of three parts, each of metal: (1) A flat blank, stamped in such fashion that two wings are separated by a narrow neck portion from which extend transverse tabs. In manufacture these wings are bent over into a position of parallelism with respect to each other, the bending occurring in the neck portion, and the tabs on both sides of the neck are bent in between the wings, serving as abutments or lugs between the wings and preventing the further compression thereof; (2) a rivet with a right angle head or arm, which pierces both wings, serving to hold them snug against the intervening tabs of the neck, thus preventing the spreading of the wings; (3) from the head of this rivet projects an arm upon which is pivoted a pull-piece, consisting of a flat metal tab of any de-

sired shape, by a perforation in its end. The pull-piece being thus engaged upon the rivet arm, the arm is permanently closed so that the pull-piece is free to slide along the rivet arm, the relative length of which is not fixed. Indeed, in one of the drawings of the patent it is shown as being almost as long as the overall surface of the wing; in another, barely long enough to permit the pull-piece pivoted thereon to rotate through a straight angle. When these three parts are thus assembled, the fastener units, on opposing edges of fabric, may on the operation of the slider pass through a channel between the wings. The outer walls of this channel are formed by a bending together of the outside edges of the parallel wings. The two opposing lines of units enter this channel in parallel interlocked position, but as they approach the neck of the slider, each line of units diverges at the rivet post into a separate channel of its own, the inner walls of which are formed by the wedge-shaped rivet post and the in-bent neck tabs, and it is in these diverging channels that the two lines of units emerge from the slider.

Claims 1, 2, 8, and 20 describe combinations including (1) wings forming diverging channels, (2) "means" for holding the wings against spreading, and (3) a pull device described, with certain limitations, as to its location.

But Sundback, No. 1,302,606, (1919) shows the wings with diverging channels, means to prevent spreading of the wings (a yoke), and also a pull device. Thus the earlier Sundback patent constitutes a complete anticipation of these claims unless it be that invention and novelty can be found in those combinations of the patent in suit by reason of their description of the location of the pull device. For the claims now under consideration recite that the pivoted pull device is "between the channels adjacent one wing to confine the actuating force to substantially the intermediate portion of the slider" (e. g., claim 1), and "near the intersection of the channels and at about the central portion" (e. g., claim 8). But the drawings show a variation in which the force is applied at a point nearer the ends of the slider than its center, the specification stating the longer travel is desirable "in large sliders for heavy work."

These claims therefore first raise a question of construction. What is meant by an application of the actuating force at "substantially the intermediate portion" of the slider? The only explanation given in the specification of the desirability of the center pull feature is that it makes for smoother operation in that in operation a component of the actuating force (directly applied in a diagonal direction with respect to the plane of the slider) will serve to raise the whole slider, instead of one end only as would be the case if the force were applied directly at that end; also to provide room to steady the slider in its movement by application of thumb and finger on the surface of the wing on both sides of the point where the force is applied, thus lessening the attendant chatter. Conceding without deciding that smoother operation may be thus obtained and that the center pull feature to that extent has a certain utility, the efficiency of this element necessarily varies. That is to say, if the pull has the effect claimed when applied precisely at the center of the slider, its efficiency does not wholly disappear when the point at which the force is applied is moved away from the center, but rather diminishes as its distance from the center increases. Indeed, even though the efficient force is applied at the extreme (forward) end of the slider, it may still be steadied against chatter, and, due at least to the partial rigidity of the stringers within the slider, the upward component of force may still tend to lift the whole slider body. Otherwise, indeed, the claimed effect of this upward component is nil when the actuating force is applied at any point other than the center of balance—to which it is not limited by the claims.

But Sundback, No. 1,302,606, shows a pivoted pull device. Like the patent in suit it has a movable pivot which is adjacent the wing. If the pull device in the patent in suit, as these claims recite, is indeed pivoted "between the channels," which strictly seems not to be the case (the rivet post being between the channels, but the rivet-arm which serves for the pivot extending from the post over the common channel in the lower part of the slider rather than between the diverging channels in the upper part), with even greater accuracy can the pivot of the earlier Sundback be said to be between the channels. And, lastly, for the reasons stated at length above, the vague description of the location of the pivot by saying it is such that the application of force is confined to the "intermediate portion" of the slider, if it has any effect, is practically tantamount to the arrangement shown in the earlier Sundback. That is to say, the word "intermediate," for lack of any other definition, must be construed to include everything between the ex-

tremes. For the court cannot by fiat, without subject-matter to aid construction, draw lines defining the "intermediate" portion. Altogether I find these broad and vague claims completely anticipated by the earlier Sundback.

But even though the combination of these claims were held to have patentable novelty, it would be impossible to find in them true invention. Their similarity, element for element, with the earlier Sundback is such that any variation found in the location of the pivot is not more than a matter of design. Indeed, the location of the pivot depends on the length of the rivet arm. But the selection of a given size of a part or the restriction of the movement of a part to a given degree, without producing any new method of operation, does not involve an exercise of the inventive faculty. Walker on Patents, § 68; Howard v. Detroit Stove Works, 150 U. S. 164, 14 S. Ct. 68, 37 L. Ed. 1039. Thus for lack of invention as well as novelty I hold these claims invalid.

Claims 6, 7, 11, and 12 each state a combination, the dominant feature of which may be deemed to be the rivet. This is described as "a clamping rivet" passing through the channeled wings, upon which the pull device is pivoted. It is a rivet which (1) clamps the wings to prevent their spreading and (2) serves as the attachment for the pull-piece And these claims consist of such a rivet in combination with the channeled wings and pivoted pull-piece.

Against the validity of these claims the defendant on its brief cites Judson, No. 504,-038; Kuhn-Moos British, No. 14,358; and Judson British, No. 6998. The defendant by reply brief also cites Judson, No. 788,317, and Aronson (U. S.) No. 1,060,412.

But Judson No. 504,038 shows at most a bail, upon which the pull-piece travels, riveted to the slider. Its specifications plainly show that this bail is riveted to the top plate (or wing) only. (Page 2, lines 16, 17). Necessarily the rivet had no clamping effect upon the plates. At most, it furnished a means of attachment and travel for the pull-piece, and lacking the means to prevent a spreading of the wings, it did not anticipate these claims. The Kuhn-Moos patent and Judson No. 788,317 show no rivet at all. Aronson's U. S. Patent, No. 1,060,412, shows a rivet, to be sure, adapted to keep the wings from spreading. But the patent contains no indication of a pull-piece connected with this rivet. On the contrary, the rivet as shown is not adapted for the attachment of a pivot-

ed pull-piece. Indeed, the commercial specimen of the patent introduced in evidence as defendant's Exhibit F shows a pull-piece rigidly fixed to the top end of the slider.

I find, therefore, that the combination of these claims is not lacking in novelty. And the obvious and inherent ingenuity of the combinations amply warrants a finding of patentable invention. Accordingly I hold claims 6, 7, 11, and 12 valid.

Claims 3 and 4 cover a slider comprising (1) wings forming diverging channels, (2) "means" engaging the wings between the channels to prevent spreading, and (3) a pull device pivoted to said means "to confine the actuating force to substantially the intermediate portion of the slider." These claims, therefore, differ from Nos. 1, 2, 8, and 20 in that the pull-piece is specified as being attached to the antispread means. In this respect claims 3 and 4 are narrower than 1, 2, 8, and 20. On the other hand, these claims differ from 6, 7, 11, and 12 in that the latter group specify that the antispread means consists of a rivet, whereas in claims 3 and 4 the antispread means is described only as "engaging the wings between the channels." Thus in this respect claims 3 and 4 are broader in scope than 6, 7, 11, and 12. Having held the one group invalid and the other valid, it remains to consider to which classification the intermediate claims 3 and 4 belong.

On the whole, I find these claims (Nos. 3 and 4) invalid. Sundback, No. 1,302,606, shows the pull-piece attached to the antispreading "means." And the antispreading means shown in Sundback, No. 1,302,606, may fairly be deemed to be "engaging the wings between the channels" as specified in these claims. To be sure, this Sundback reference does not show an antispreading means which pierces the wings between channels. But it does show an antispreading yoke which encompasses the wings between the divergent channels. Since many of the claims of the patent in suit (e. g., claim 12) specify an antispread device which passes through the wings, it is necessary to give these claims which specify an antispread device between the channels a broader construction. And so construed, as I have indicated, their validity cannot be sustained. For though narrower in scope than claims 1, 2, 8, and 20, they are, in the respect indicated, too broad to share the validity found in claims 6, 7, 11, and 12.

Claim 21, however, escapes the anticipatory effect of Sundback, No. 1,302,606, in that although, like claims 3 and 4, the antispread "means" upon which it counts is not

fully described, yet it is specified as "passing through the wings." This claim therefore deserves the validity accorded to claims 6, 7, 11, and 12.

Claims 14 and 16 state combinations comprising (1) wings (a) forming diverging channels and (b) connected between said channels by a neck, and (2) side portions of the neck being bent down to form inner walls for said channels. Thus the essence of these claims is the presence in the combination of a neck piece connecting the wings with integral tabs so disposed as to form inner channel walls.

Clearly Sundback, No. 1,302,606, which shows inner walls for the channels formed from a separate key piece does not anticipate. And notwithstanding the defendant's vigorous contention to the contrary, I find the Rocke reference, No. 1,511,777, does not show inner walls integral with the wing-forming blank. The Rocke drawings (Figs. 3 and 4) indicate a lack of integrity between these parts, and its specifications (page 2, line 14) expressly describe the channels by reference to Sundback, No. 1,219,881, which in turn shows (Fig. 2, and page 1, line 10), instead of integral tabs, a separate cap to which the wings are riveted.

But though not lacking in novelty these claims (14 and 16) show no patentable invention. Wings formed from a single blank connected by a narrow neck-piece were well known in the art. Channels such as shown in this patent with inner walls diverging had been known at least since Judson, No. 557,207 (1896). So far as the evidence disclosed, the inner walls in the patent in suit have no essential function other than those of Judson. And Aronson, No. 1,060,412 (1913), shows channels integral with the wings, the inner as well as the outer channel walls being formed by the shaping of the wings, presumably by a stamping operation. Thus in this respect the Aronson reference differs from the patent in suit only in that the inner channel wall is formed from a different portion of the original blank. But such a difference is a matter of design only, and skillful though the design of the patent in suit may be, it falls short of patentable invention. Consequently I hold claims 14 and 16 void for lack of invention.

Claims 18 and 19 include in combination (1) with the wings connected by integral neck-piece and side tabs, (2) a rivet passing through the wings "adjacent the vertex of said channels." Claim 19 further specifies this rivet as being of wedge-shaped cross section with the point of the wedge at the vertex of said channels. Neither claim includes the pull-piece as an element.

The rivet is so described in these claims as necessarily to constitute a part of the inner wall of the diverging channels and guide for the fastener units, the remainder of the inner walls being formed by the in-bent neck-tabs, already described. Indeed, on its brief, the defendant says: "It is the rivet itself which constitutes the inner walls of the diverging channels." And under a proper construction of these claims, the rivet is seen to have a clamping effect upon the wings, holding them against spreading. Nowhere does the prior art show a slider containing a rivet of such a character performing these two functions. Judson's British Patent, No. 6998, cited by the defendant in this connection, shows two plates (wings) separated by a triangular block, apparently not integral with either plate, which serves only to space the plates. These plates and wings are shown as perforated and presumably are clamped by an ordinary round rivet, which is not shown in the drawings nor mentioned in the specifications and which can have no function but to hold the plates and block together. Kuhn-Moos British Patent, No. 14,358, also cited by the defendant, shows no rivet at all. If Aronson, No. 1,060,412, indicates a clamping rivet, its location is quite outside the channels, and it serves neither as cam nor guide for the fastener units. Altogether I find in the mass of prior art which has been brought to my attention nothing which teaches a combination so ingenious as that of these claims. Consequently I hold claim 18 valid.

But claim 19 contains no essential difference from claim 18. The recital of claim 19 that the rivet shall have a wedge-shaped cross section is at most a refinement of design. Indeed, the plaintiff itself urges that one of the defendant's models which is charged to infringe includes all the elements of claim 19 except the wedge-shape of the rivet. But this model operates successfully and with the same method of operation as the models in which the rivet is wedge-shaped. And so, even though claim 19 is apparently narrowed by the inclusion of this element, yet, having found claim 18 valid, I am unable to discern an independent invention in claim 19 and accordingly hold it invalid. Walker on Patents, § 220.

■ Having now discussed all of the Sundback claims relied upon, my holding is, by way of summary, that claims 6, 7, 11, 12, 18, and 21 are valid, and that claims 1, 2, 3, 4, 8,

14, 16, 19, and 20 are invalid and will proceed at once to consider the charged infringement of the Sundback patent which the defendant contests.

Of the defendant's manufacture, two models are charged to infringe, examples of which are in evidence as Exhibits 7 and 8. Both of these sliders I find have the rivet piercing the wings and forming the vertex of the diverging inner channel walls, and in both the rivet serves to prevent any spreading of the wings and also as the means of attachment for the pivoted pull-piece. Both, by stipulation of the parties, were made, used, and sold by the defendant in the United States after the patent in suit had issued and before the bill herein was brought. Both, I find, infringe claims 6, 7, 11, 12, 18, and 21 of the Sundback patent, No. 1,566,996.

### Whitney Patent.

■ This patent discloses a slider in all respects similar to that of the Sundback patent in suit, except: (1) the rivet is staple-shaped or bifurcated, with a U-shaped head in which the pull-piece pivots. Both legs of the rivet pierce and clamp the wings of the slider in its longitudinal axis, and (2) the extremity of the pull-piece which is pivoted on the rivet has a projection which operates as a cam upon the surface of the upper wing. The result is that when the pull-piece is at an angle with the plane of the slider, as when grasped for purposes of operation, the cam is released from the pressure on the wing and the slider is free to move in the direction of the pull precisely as in the Sundback patent. When, however, the pull-piece is pushed down into a position parallel with the surface of the wing, the cam, coming into operation, depresses the upper wing upon the fastener units between the wings, thus holding them by friction so as to prevent their movement.

The patent discloses a single cam only upon the pull-piece. As a result, although the slider may be moved in either direction according to the direction of the pull, it can be locked only by bringing the pull-piece into parallelism with the surface of the wing on one side only of the rivet member.

The plaintiff relies upon claims Nos. 1 to 6. All of these claims specify a cam on the operating handle, arranged to cause the plates or wings of the slider to grip the interlocking members or fastener units, thus locking the device in adjusted position. It thus appears that the locking feature of the cam upon the operating member of the pull-piece pivoted to the rivet, is the essence of the invention claimed.

The slider which the plaintiff produced under this patent conforms to the specifications of the patent except that, instead of the bifurcated rivet shown by the patent, it used a rivet very similar to that shown in the Sundback patent; and instead of a single cam on the end of the pull-piece (thus allowing the slider to be locked with the pull-piece depressed into parallelism with the surface of the slider on one side only of the rivet head to which it is pivoted), the plaintiff's commercial slider has a double cam on the end of the pull-piece so that the slider may be locked by depressing the pull-piece on either side of its fulcrum or rivet head. The defendant's commercial slider, which it is charged infringes this patent, was designed and introduced into the market by the defendant after the defendant's principal officer, who was active in the design of the defendant's products, had actually seen the Whitney patent. The defendant's slider being almost identical with that shown in the Whitney patent, especially with reference to the cam locking feature, I can only conclude that the defendant copied the invention of the plaintiff's (Whitney) patent. However that may be, the defendant, on brief at least, does not attempt to meet the charge of infringement, but confines its defense to the contention that the plaintiff's Whitney patent lacks patentable invention.

On the issue of invention, the defendant cites Aronson's French patent, No. 442,132. The reference however, does not support the contention since Aronson discloses a wholly different means for the locking result, a blade-like member insertable through the slider and between the fastener units. The Binns reference, No. 1,506,286, cited in the answer, seems to have been abandoned on brief. In any event, the locking device which it discloses shows no resemblance whatever to that of Whitney. Instead, the defendant on brief relies upon Koplin, No. 293,476, showing a lock for rein-holders; Clark, No. 379,934, a lock for a rope fire escape; Booth, No. 442,906, showing a compression cock operating upon a flexible rubber tube; Dulje, No. 526,830, a shoe fastener; McEwen, No. 631,-938, a fastener for tent ropes; Prentice (the defendant's president, manager, and patentee), No. 1,443,145, showing a lock for a belt buckle, and Ockford, No. 374,749, showing a device for locking a mail box by friction on flexible locking or closing cords. None of these references discloses the entire combination of the Whitney patent. But the de-

fendant contends, in so far as these contentions disclose earlier applications of the principle of locking by friction, they demonstrate that no patentable invention was required by the application of that principle to the device in question.

The contention, however, cannot be sustained. The problem in locking a slider into given position upon fastener units suitable for a fastener involved the introduction of a new feature into an intricate fastener mechanism and was quite a different problem from that involved in the locking of a slider upon unitary material such as a single piece of leather, rope, rubber tubing, etc., which was the problem of the references. The defendant has produced not a single reference showing a slider operating with metallic fastener units, in which the principle of cam-produced friction has been disclosed to obtain a locking effect. One skilled in the art of designs pertaining to hookless fasteners, could never have evolved the design of the patent in suit if he had drawn only upon his familiarity with that art. To adapt with success the elementary principle of cam and lever to produce friction for locking the device in question, involved more than routine design.

The defendant itself seems not to distinguish between the six claims of this patent. Finding as I do that the application of the locking device to fasteners of this type involved the exercise of patentable invention, I hold that all the claims of this patent are valid.

On brief, the defendant seems not to dispute that the patent, if valid, is infringed. It was stipulated that the defendant's product was made, used, and sold in the United States after the issue of the patent in suit and before the bill was brought. That the defendant's product on which the charge of infringement is based, like the plaintiff's product for the protection of which this patent is invoked, has a single-post rivet instead of the double or bifurcated rivet, and a double-action cam instead of a single cam acting in one direction only is of no significance. For even the defendant seems not to deny that the elements actually used are the equivalent of those disclosed by the patent. In any event, such I find to be the case and hold the first six claims of this patent valid and infringed.

In considering both the Sundback and Whitney patents in suit, I have not neglected to consider numerous contentions of both parties growing out of file wrappers, and other factors. But the opinion is already too long, and ought not be extended.

But one incidental question remains to be decided. The original bill counted also upon a charged infringement of Statham reissue patent, No. 17,437. Some six months after filing its bill, the plaintiff notified the defendant that it would withdraw the Statham patent from the suit. At trial plaintiff moved that the bill with respect to the Statham patent be dismissed without prejudice, the defendant objecting that its dismissal should be only upon the merits. On authority of Pullman's Palace-Car Co. v. Central Transportation Co., 171 U. S. 138, 18 S. Ct. 808, 43 L. Ed. 108; which was followed in Hawie Manufacturing Co. v. Hatheway Manufacturing Co., Equity No. 1719, U. S. D. C., Connecticut, the motion to dismiss without prejudice may be granted. It having been represented to the court that the defendant was put to additional expense in connection with its defense by the presence of the Statham claims in the bill, and since ordinarily the costs of a bill dismissed run to the defendant and on a bill sustained to the plaintiff, in this case it seems equitable that the costs to each should be offset, and with costs to neither party.

A decree may be entered in accordance with this opinion.

## On Rehearing.

HINCKS, District Judge.

On rehearing the defendant argues that the court fell into error finding patentability in the Whitney patent in view of the fact that the prior art is replete with means for the application of cam-produced friction to lock sliders of various types. It is urged that the problem which confronted Whitney was essentially a problem in the art of locking rather than one pertaining to the art of slide fasteners. Since in locking devices the use of cam-produced friction is old, it is argued that Whitney disclosed neither invention nor novelty in applying that familiar locking means to a new use on an old type of slider.

In support of this claim the defendant relies largely on Stearns & Co. v. Russell (C. C. A.) 85 F. 218, and Jay v. Weinberg (C. C. A.) 262 F. 973, 974. As I read the Stearns Case, the invention of the patent there in suit covered merely a suction bar designed only for holding pills. The specifications and the claims, at least so far as reported, indicate that other means not specified by the patent should be used to control the suction bar in its movements in the dipping and drying process. The court found that the device of the patent was almost a replica of a suc-

tion device used to feed paper into a press as one element or subcombination of the patent covering a larger machine, and, as I read the opinion, held only that no patentable invention or novelty was required to appropriate one element or subcombination from an earlier machine and use it as an independent tool for another use in another process. Clearly this holding cannot control the decision here. For Whitney did more than to appropriate a cam and lever from the prior art and use it as a separate tool. Instead, he contrived to adapt a cam into co-operative combination with an operable slide fastener. To be sure, the slide fastener of his combination, independently considered, may have lacked invention and novelty. But it was the combination, rather than any element thereof, which was claimed as the patentable invention.

Nor does Jay v. Weinberg hold that patentable invention cannot be predicated upon a new combination of old devices.

In any event, in this case the presence of invention and novelty is apparent from the history of the prior art. To be sure, Ockford in 1880 applied the principle of the cam and lever to lock a fastener on the closing ropes of a mail bag; in 1888 Clark applied the same principle to lock the jaws of a fire escape device upon the rope on which it traveled; in 1890 Booth used the principle to lock the flow of liquid through a flexible tube; in 1894 Dulje used the principle in a shoe lace fastener; in 1923 Prentice himself used the principle in a belt buckle. But in the earlier forms of slide fasteners from Judson (1893) onward, so far as the record discloses, no one thought to apply the principle to a slide fastener until Whitney. Yet the prior art shows an effort to provide fastener sliders with suitable locking means. Thus Aronson, in his French patent, shows a finger or bar insertable between the fastener units for locking purposes; and Binns, in 1924, showed a lock for slide fasteners consisting of hooked fasteners integral with the pull-piece, adapted to engage upon stops set into the stringers.

To be sure, from the time of Judson on through Sundback's patent in suit, the existing types of sliders, because of the rigidity of their wings, were not adapted to such an application of the cam as Whitney showed. And the art showed no slider with wings adapted for compression until the slider with the central rivet piercing the wings had been invented. Even though the slider with the central rivet preceded Whitney, his use of the central rivet on a slider as a co-operative member between cam-actuated wings involved novelty and invention.

I must, therefore, decline to alter my decision.