CITY OF CARLSBAD et al. v. W. T. THACKERAY & CO.

(Circuit Court, N. D. Illinois, N. D. August 10, 1891.)

TRADE-MARKS AND TRADE-NAMES—CARLSBAD SALTS.

The city of Carlsbad, Bohemia, sole owner of the celebrated mineral springs of that city, having for 50 years been engaged in the business of evaporating the waters, and selling the salts thus obtained under the names "Carlsbad Salts" and "Carlsbad. Sprudel Salts," is entitled to an injunction to restrain other parties from using these words, even with the word "Artificial" added thereto, as names for artificial salts containing the same chemical elements, although the artificial salts may be superior to the natural product.

In Equity. Bill by the city of Carlsbad and others against W. T. Thackeray & Co. to restrain respondent from infringing complainants' trade-marks. Decree for complainants.

A. M. Gerstlet and Jerome Carty, for complainants.
John G. Elliott, for defendant.

BLODGETT, District Judge. By the bill in this case, complainants charge that the city of Carlsbad, situated in Bohemia, in the empire of Austria, is the sole owner of the celebrated mineral springs of said city, and has for many years been engaged in the business of evaporating the waters of said springs, and thereby producing the essential salts contained in them, and from which said waters derive their peculiar medical qualities and value, and has put said salts upon the market under the names of "Carlsbad Sprudel," "Carlsbad Salts," and "Carlsbad Sprudel salts," and that such salts have become widely known by such names, and are understood to mean and indicate salts obtained from the natural waters of the springs so owned by the city of Carlsbad. That defendant has engaged in the business of making artificial salts, and putting them upon the market, and offering them for sale, by the names and designations of. "Carlsbad Sprudel" and "Carlsbad Sprudel (Artificial,)" which salts are not made from the natural waters of the Carlsbad Springs, but, by reason of the name "Carlsbad" being used, are calculated to deceive purchasers and thus injure the business of the complainant and also impose upon the public. An injunction is prayed, restraining defendant from making and selling any artificial salts as "Carlbad Salts" or as "Carlsbad Sprudel," and from using the word "Carlsbad" as the designation of the defendant's salts.

. Defendant is a corporation doing business in the city of Chicago, and on the hearing of the motion for the injunction admitted that

it is engaged in making and selling artificial salts which are labeled and designated by the names of "Carlsbad Sprudel" and "Carlsbad Sprudel Salts," and that upon some of the labels the word "Artificial" is printed in brackets after the word "Carlsbad."

Affidavits are also produced in behalf of defendant tending to show that the chemical constituents of the Carlsbad waters have long been publicly known, from reports of chemical analysis made by eminent chemists, which have been widely published by the complainants, and those interested in the sale of their salts; that the essential chemical elements of the waters, as well as their therapeutic quality, is treated of in well-known medical works and medical journals; and that the word "Carlsbad," as applied to salts, has come to mean and imply a salt containing the chemical elements of the Carlsbad waters, the same as the name "Epsom Salts," and "Glauber Salts" indicate, in the medical nomenclature, salts which contain certain chemical combinations.

The proof shows that the salts made by complainants from these natural waters, and labeled "Carlsbad Sprudel," etc., have been on the market for over 50 years, and there can be no doubt, from the proof, that their wide reputation arises from the fact that they are known to be the product of the natural waters of the Carlsbad springs, whose healing qualities are a matter of general notoriety. There can be no doubt that the city of Carlsbad, being the manufacturer of these salts, had the right to indicate their origin by its own name, to the same extent that a natural person would have such right; and it is equally clear to my mind that no other manufacturer of salts, even of the same chemical elements, has the right to put them on the market in the complainants' name. The complainants' salts are not only made in Carlsbad, but are made by Carlsbad, and no one else has the right to use the name of Carlsbad as a designation of salts obtained from the Carlsbad waters.

The mere fact that skilled chemists can combine the constituents of those salts so as to make a more or less perfect imitation of them does not justify defendant in trading upon the reputation which has been established for complainants' goods. I have no doubt that the eminent chemist, Dr. Haines, whose affidavit is filed here by defendant, would, on the mention of the words "Carlsbad Sprudel," know just what kind of salts were meant, and the constituent elements of them; but that fact does not make complainants' name public property, and allow every one to affix it as a designation or label to salts of his own make, although his manufacture may contain, so far as chemistry can determine, the same chemical constituents as complainants' salts. The terms "Carlsbad Sprudel Salts" mean more than a mere combination in certain proportions of certain chemical elements. They mean an article produced by the complainant from the Carlsbad waters.

Nor does the addition of the word "Artificial" by the defendant to its label enable the defendant to escape from the charge of wrongfully availing itself of complainants' name and reputation. The word is so placed as not specially to attract attention. In

fact, the average purchaser would only ask for Carlsbad Sprudel, and be handed the package done up in wrapping paper; thus giving no opportunity for examination until the purchaser undoes it for use, when it would likely be too late to correct the mistake.

Nor does the claim that these artificial salts made by defendant are in fact better than those made by complainant, owing to the fact that the natural spring waters vary from time to time in the proportions of mineral constituents, avail as a defense, as complainant has the right to the benefit of the good will and trade it has established for its own product, and if defendant can produce a better article it should do so on the credit of its own name, and not on the good name of the complainant. An injunction will be ordered as prayed.