**HOOKLESS FASTENER CO. v. LION FASTENER, Inc. ***

No. 2617.

District Court, W. D. Pennsylvania.
April 5, 1933.

*Decree modified 72 F.(2d) 985.

Jo. Baily Brown, of Pittsburgh, Pa., for plaintiff.

Hugh C. Lord, of Erie, Pa., for defendant.

SCHOONMAKER, District Judge.

This is a patent suit involving Sundback Patents Nos. 1,219,881; 1,243,458; and 1,566,996, and Shipman Patent No. 1,734,405. They all relate to slide-fasteners commonly referred to as "zippers," now in general use on clothing, bags, tobacco pouches, etc.

Another patent, Binn's 1,655,982, was originally included in this suit, but at the trial this patent was withdrawn by the plaintiff; and the bill was ordered to be dismissed as to this patent, on the condition that it would not be available in any other suit charging the same infringement.

As to the patents in suit, the issues raised in the case are as follows:

(1) As to Sundback Patent No. 1,219,881, applied for August 27, 1914, and issued March 20, 1917 (sometimes referred to as the First Sundback Patent), relating to a combination of elements making up a complete fastener, all of the eleven claims are in suit except claim 5.

The defendant contends that claims 1, 2, and 3 (interlocking structure-claims) are invalid because: (1) Of indefiniteness; (2) of a disclaimer filed by the plaintiff since suit brought. Defendant further contends that its construction does not infringe these claims.

The defendant contends that claims 4 and 6 to 11, of this patent (the stop-claims) are invalid, because there is no support for the inventive subject-matter of the claims in the original application.

Defendant further contends that, even if valid, the infringement, if any, is so inconsequential as to preclude a decree on these claims.

(2) As to Sundback Patent No. 1,243,458, applied for August 27, 1914, and issued March 20, 1917 (sometimes herein referred to as the Second Sundback Patent), relating to details of construction of the interlocking elements, claims 1, 2, 3, 7, and 15 are in suit.

The defendant claims that claims 1, 2, 3, and 15 of this patent are invalid by reason of the double patenting.

The defendant contends that claim 7 of this patent, if interpreted to include defendant's structure, is invalid, because of the prior art, and if interpreted to clear the prior art, defendant does not infringe.

(3) As to Sundback Patent No. 1,566,996, applied for May 8, 1932, and issued December 22, 1925 (sometimes herein referred to as the Third Sundback Patent), relating to details of construction of the slider member of the fastener, claims 6, 12, and 13 are in suit.

The defendant contends that the claims of this patent in suit are invalid, if interpreted to include defendant's structure, and if interpreted to avoid the prior art, defendant's structure does not infringe.

(4) As to the George C. H. Shipman Patent No. 1,734,405, applied for July 2, 1928, and issued November 5, 1929, relating to an automatic lock upon the slider, claims 1, 2, and 3 are in suit.

The defendant contends that this patent is invalid by reason of the prior art, and that defendant does not infringe.

From the bill, answer, and proofs, we make and file the following findings of fact and conclusions of law:

### Findings of Fact.

1. The plaintiff is the owner of all the patents in suit.

2. Prior to the filing of the bill of complaint, to wit, on November 21, 1931, the plaintiff notified the defendant of the alleged infringement of the patents in suit.

3. Plaintiff's Exhibit 7 is a sample of defendant's fastener manufactured by defendant prior to the filing of the bill of complaint subsequent to the issue of the patents in suit, and subsequent to notice to defendant of the alleged infringement.

4. By disclaimer filed in the Patent Office on April 6, 1932, and after suit brought in this case, the plaintiff disclaimed from the scope of claims 1, 2, and 3 of Patent No. 1,219,881, "any fastener except one in which the longitudinal thickness of the interlocking members and the distances, if any, between the sides of the members and the sides of the recesses and projections are so slight as to enable the fastener to be bent transversely of its length without opening automatically."

5. The idea of a separable fastener having opposing members which interlock one with the other through the manipulation of a slider operating on the interlocking members progressively, was not new with the

plaintiff. The prior art has many examples of such structures. We do not deem it necessary to advert to these structures, as we do not understand that the plaintiff claims any novelty in the use of separable fasteners with interlocking members manipulated by a slider.

6. To demonstrate the state of the art when the Sundback patents entered the field in 1914, the Kuhn-Moos British Patent No. 14,358 of 1912 (with a corresponding Swiss patent) is the best example. It was the principal patent considered by the Patent Office in relation to the first two Sundback patents. The Kuhn-Moos fastener has a double row of interlocking members arranged in staggered relation on beaded edge tapes. It is closed and opened by the operation of a slider. The interlocking members are locked by the engagement of projections and recesses oppositely placed on opposite faces of the members. These interlocking members are formed of parallel-sided plates of any desired thickness, width, and length, so placed on the tape that the free and flexible portions of the tape between each member is equal at least to the thickness of the members. These members are secured to the bead of the edge of the tape by clamping jaws. The metallic parts of this device are all capable of being formed and shaped on automatic machines. The projection on the interlocking member is a rounded pin, and the corresponding recess is semicircular in shape.

7. The fastener of the first two patents in suit (Sundback Nos. 1,219,881, and 1,243,-458) is of the same general type as the Kuhn-Moos fastener. This Sundback fastener is made by clamping upon the edges of stringers, or tapes, small thin metallic interlock-members, evenly spaced apart, having a projection on one side and a corresponding recess on the other side. Parallel tapes with such members mounted thereon are fastened together at one end by a bottom stop, with the interlock-members of each tape arranged in staggered or alternating relation to the co-operating members on the other tape. A slider is mounted between the tapes so that it positions and guides the series of interlock members into engaged and disengaged position by bending the tapes into rounded or arcuate relation to each other, just before they are brought into parallel closed seam relation. As the slider moves along the tapes, the free ends of the interlock members on the two tapes are caused to come together in alternating interengaging relation; and the free ends of the interlock members are brought into parallel, overlapping, interleaving relation, in which position the projections on the upper side of one series of the members fit into co-operating recesses on the under sides of the members in the series carried by the other tape. After the slider has passed on and the jaw-members have thus interleaved, overlapped, and engaged, a closed lock-seam results, in which the members are not readily displaced by individual strain on them or by bending in any direction. At the free ends of the stringers or tapes, top stops are provided to limit movement of the slider at that end of the seams. These stops are adapted to enter the slider for a distance sufficient to permit the seam to be closed to its end.

The interlocking members of this structure have elongated projections and recesses as disclosed by the first patent, and, as disclosed by the second patent, these projections and recesses are transversely rounded and extend from edge to edge of the interlocking member. This second patent also discloses that the front face of the projection is extended and continued to the recessed side of the member forming an entrance wedge therewith.

(8) The marked difference between Kuhn-Moos and Sundback structures arises from the shape of the projections and recesses. In Kuhn-Moos, the projections are rounded pins; and the recesses are semispherical. In Sundback, the projections and recesses are elongated and transversely rounded.

(9) This elongated projection and recess of the Sundback structure prevents the turning of one member with relation to another, which occurs in the Kuhn-Moos structure, permitting the interlocking members to be disengaged when tapes are bent.

(10) The Sundback interlocking members are thinner than those of Kuhn-Moos, but the exact thickness required is not specified in the patents. By the disclaimer of April 6, 1932 (fourth finding of fact), the plaintiff undertook to disclaim from the scope of the first Sundback patent and fastener, any fastener, except one in which the longitudinal thickness of the interlocking members was so slight as to enable the fastener to be bent transversely of its length without opening automatically.

(11) The defendant's structure is also of the same general type as Kuhn-Moos and Sundback, with this difference—the projections instead of being rounded or elongated and rounded transversely, are triangular in

shape. These triangles are approximately equilateral, the projection having the apex of the triangle next to the front end of the interlocking member and the recess having the base of the triangle next to the front end of the interlocking member. The projection has substantially flat sides and transversely flat top with corners slightly rounded. It is spaced back from the first edge of the interlocking member, forming a definite notch-step between the front edge of the member and the front of the projection. The recess is positioned to receive the projection when the members come into interlocking engagement. Its sides and bottom are substantially plane surfaces with sharp corners.

(12) It appears by the file-wrapper of the Patent Office of Sundback Patent 1,219,-881 (Defendant's Exhibit NN), that the first ten claims of the Sundback application (interlock member claims) were all rejected on Kuhn-Moos; and claim 11 was rejected on Kuhn-Moos and Aronson 1,060,412. The claims were then amended by limiting the projections and recesses on the interlocking members by specifying that the projection was transversely rounded and elongated, and that the recess was transversely rounded and elongated. This application then went into interference with the Frank Krich application over the stop-claims, and these were awarded to Sundback. Whereupon, the interlocking member claims, as amended, were again rejected by the Patent Office; but on further argument and further amendment, these interlocking-member claims were allowed.

(13) It appears by the file-wrapper of the Patent Office of Sundback Patent No. 1,243,458 (Defendant's Exhibit OO), that this application was filed on April 6, 1915. This was after the action of the Patent Office of October 17, 1914, rejecting the claims of the first application on Kuhn-Moos. The only difference between the two applications is that the second application more specifically states the elements that might distinguish it from the Kuhn-Moos structure. There are no new elements brought into the Sundback structure by the second application. The original interlocking-member claims of this application were rejected on Kuhn-Moos, but after further amendment to show the distinguishing features between Sundback and Kuhn-Moos, the claims in suit were allowed.

(14) The stop-claims of the first Sundback patent, Nos. 4 and 6 to 11, were in interference in the Patent Office with Krich, and were awarded to Sundback. The novel element of these claims is the feature that the stop-members go into the slider and stop movement by striking each other. This feature was not shown in the original specifications, but was disclosed by the drawings and carried into the application by amendment. October 14, 1915 (File First Patent, page 18).

(15) The third patent (Sundback 1,566,-996), covers the slider per se. The distinguishing feature of the construction here involved is the combination of a sheet metal member having two parts bent upon itself to form channels with intermediate spacing means, a rivet at the center of the slider extending through the two halves of the slider so formed, and a pull member slidably mounted upon the rivet.

(16) The defendant's slider is formed by two plates having inturned edges. These plates are bent into opposing positions and fastened by a rivet extending through the two plates, the rivet having an extended head with a groove or recess for pivotally receiving a pull. The rivet assists the neck formed integrally with the plates in securing and clamping the two plates together. This rivet is arranged at the extreme end of the slider.

(17) The prior art shows in the Judson Patent No. 504,038, a slider with a bail upon which the pull-piece travels. This bail is riveted to the top plate of the slider. There is nothing to indicate that it extends through the plates or performs any function in holding the plates or wings of the slider together.

(18) The Shipman patent in suit, No. 1,734,405, discloses a lock-slider the dominant feature being an automatic lock, shown as a spring device, which is constantly urged in engagement with the edges of the interlock member of the fastener. This lock, when engaged automatically, prevents movement of the slider further to open the fastener. This locking effect is only released when the pull-piece is being operated to move the slider. A fixed loop surrounds the spring, so that the pull-piece, after raising the spring, is prevented from displacement by the rigid loop.

(19) The defendant has manufactured some sliders with a gravity lock substantially like that of the patent in suit, though the evidence does not disclose that the defendant ever sold any of them, or that the defendant is now making or using this type of automatic lock-sliders.

(20) The fastener covered by plaintiff's patent has been a commercial success, and

has been extensively manufactured and sold by the plaintiff.

(21) The defendant has infringed all the patents in suit.

### Conclusions of Law.

1. That the patents in suit are valid.

2. That the plaintiff is entitled to relief prayed for as to all of the patents in suit, except the Shipman Patent No. 1,734,405, as to which patent the defendant ceased infringement before suit brought, and has never sold any commercial product of that type.

### Discussion.

The patents in suit relate to hookless fasteners, now commonly known as "zippers," which are applied to bags, garments, and a variety of other articles for the purpose of closing openings therein.

The first hookless fastener was invented by Kuhn-Moos, No. 14,358, British Patent of 1912. This patent was cited in the Patent Office against the plaintiff's claims, and this discussion was acquiesced in by Sundback, who sought by amendment of his claims to distinguish his structure from that of Kuhn-Moos. We, therefore, conclude that the plaintiff's patent is valid, only so far as it is distinguishable from Kuhn-Moos: Weber Electric Co. v. E. H. Freeman Electric Co., 256 U. S. 668, 41 S. Ct. 600, 65 L. Ed. 1162.

In the Sundback structure, we find dominant features which, in our opinion, clearly distinguish it from Kuhn-Moos, i. e., (1) the use of thin metallic, interlocking members, which can be readily fabricated by a stamping process, as distinguished from the thick interlocking members of the Kuhn-Moos structure, which can only be fabricated by a coining process; (2) the use of elongated and transversely rounded projections and recesses on the interlocking members on the Sundback structure, as distinguished from the rounded pin-projection and semicircular recess of the Kuhn-Moos structure; and (3) the use of stops at the top and bottom stops to check the operation of the slider, as aperture equipped with the interlocking members is opened or closed, as distinguished from the Kuhn-Moos, which discloses no stops at all.

These dominating features of the Sundback structure co-operate to overcome a deficiency in the Kuhn-Moos structure, i. e., the preventing of the disengaging of the interlocking members when fastener is transversely bent.

These distinguishing features of the Sundback structure evidently brought about the commercial success of that structure, as distinguished from the Kuhn-Moos, which does not appear to have any commercial success at all. The Kuhn-Moos patent was cited in the German courts against a German Sundback patent covering the same features as the Sundback patents here in suit; the Sundback was upheld, because of the dominating features herein referred to, which clearly distinguish it from Kuhn-Moos. (See German decision offered in evidence in this case.)

The defendant contends that the first Sundback patent (claims 1, 2, and 3) does not disclose these distinguishable features, and they are therefore invalid. We cannot agree with this contention. We find in this Sundback patent ample disclosures of these distinguishing features. (See Sundback Patent No. 1,219,881, p. 2, line 32; p. 2, line 53; p. 1, line 38; p. 1, lines 52–62; p. 2, lines 32, 43.)

Defendant further contends that these claims are invalid, because of indefiniteness brought about by the disclaimer filed by the plaintiff, after this suit was brought. This contention we cannot agree to, because, in our opinion, it merely limits the operation of the claims, and does not undertake to add anything thereto, which is not claimed in the original claims.

We, therefore, hold that these three claims of this patent are valid.

Turning now to the stop-claims (4, 6 to 11) of the first Sundback patent, the defendant contends that these are invalid, because there is no support for the inventive subject-matter in the original application. We cannot concur in this position because, as found in our fourteenth finding of fact, the dominating features do appear in the drawings and were carried into the application by amendment October 14, 1915. These claims were in interference with the Krich application and awarded to Sundback by the Patent Office. We hold these claims to be fully supported by the drawings and specifications and hold them valid.

Next, as to the contention that claims 1, 2, 3, and 15 of the second Sundback patent are void for double patenting. True, the fastener, as a whole, disclosed in the second patent, is the same fastener described in the first patent; but the claims of this second patent more specifically state the features that distinguish it from Kuhn-Moos, i. e., the braided or twisted cords of the tape (p. 1, line 77); the elongated slot of the jaws of

the interlocking members in which the stringer is clamped (p. 2, line 29) ; and the extension on the recesses and projection of the interlocking members from edge to edge (claims 1, 2, 3). We, therefore, decline to hold this patent void for double patenting.

Having held these patents valid, we now discuss the question of infringement. We find that the defendant has, in its triangular projections and recesses on the interlocking members, applied the principle discovered and disclosed by Sundback in his patent, i. e., that the projection and recesses must be so fashioned as to prevent the disengaging of the interlocking members when transversely bent. That was the fault with the Kuhn-Moos structure which Sundback discovered and corrected. The defendant applies the same principle in its fastener to prevent opening of the interlocking members, even though the exact form of the projections and recesses are not the same.

We, therefore, hold claims 1, 2, and 3 of the first patent, and claims 1, 2, and 3 of the second patent infringed.

Considering now the stop-claims of the first patent (4, 6 to 11), we find that the defendant employs the two cords, the elongated slot between the clamping jaws, and the stops constructed to enter the slider, and therefore infringes these claims. As to claim 7 of the second patent, the defendant employs a stringer having a bead formed by two cords, one on each side of the edge of the tape, and therefore infringes this claim.

The third Sundback Patent, No. 1,566,- 996, deals with the structural features of the sliders per se (claims 6, 12, and 13). The dominant feature of this slider is the provision of wing members made by doubling upon itself a single metal stamping having intermediate integral spacing means, fastening the two wings together with a rivet, and attaching a pull-device to the rivet. The Judson Patent No. 504,038 was cited against this patent. We do not find the rivet in the Judson structure. We do find a bail-pin soldered to top-plate of the slider; but there is no indication that it extends through both wings of the slider to hold them together.

Judge Hincks, in the District Court of Connecticut, in Hookless Fastener Co. v. G. E. Prentice Mfg. Co., 6 F. Supp. 176, held claims 6 and 12 of this patent valid. Claim 13 was not involved in that suit. We concur in Judge Hincks' opinion, in spite of a Canadian court decision to the contrary. We can find no anticipation of the features of the claims in suit in the prior art, and hold these claims valid. The defendant employs the clamping rivet of this patent. We therefore hold these claims infringed.

As to the Shipman patent covering the automatic lock-sliders, the defense is noninfringement. Defendant admits making a few automatic lock-sliders, but denies selling them, and has ceased to make them, even before suit was brought. We are, therefore, of the opinion that it is unnecessary to pass any opinion as to the validity or infringement of this patent, because the infringement, if any, is inconsequential, and would not support a decree for an injunction.

Let a decree be submitted in accordance with this opinion.