## In re ORION CO.
### Customs Appeal No. 3682.

Court of Customs and Patent Appeals.
May 23, 1934.

Pickrell & McDonald, of New York City (Daniel P. McDonald, of New York City, of counsel), for appellant.

Barnes, Richardson & Halstead, of New York City (J. Bradley Colburn, Samuel M. Richardson, and Albert MacC. Barnes, all of New York City, of counsel), for Hookless Fastener Co.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

In July, 1932, Hookless Fastener Company, a Pennsylvania corporation, filed a complaint with the United States Tariff Commission under section 337 of the Tariff Act of 1930 (19 USCA § 1337), setting forth that it

was engaged in the manufacture and sale of slide hookless fasteners. The complaint alleged that it was operating as the assignee of nine patents, numbered as follows:

Sundback, No. 1,219,881, granted March 20, 1917.

Sundback, No. 1,243,458, granted October 16, 1917.

Sundback, No. 1,302,606, granted May 6, 1919.

Sundback, No. 1,566,996, granted December 22, 1925.

Whitney, No. 1,598,183, granted August 31, 1926.

Sundback, Reissue No. 17,891, granted December 2, 1930.

Sundback, No. 1,661,144, granted February 28, 1928.

Sundback, No. 1,813,433, granted July 7, 1931.

Seaver, No. 1,830,077, granted November 3, 1931.

The complaint also represented that the complainant, designated throughout the complaint as the petitioner and hereinafter referred to as the complainant, was also the owner of a trade-mark registered in the United States, being the word "Talon," which was applied to said slide fasteners when sold. It further alleged that since 1913 the complainant has been manufacturing said product and has been conducting its business efficiently and economically; that during the year 1931 there began to be imported into the United States, unfairly and in violation of the patent and trade-mark rights of the complainant, certain slide hookless fasteners manufactured in foreign countries; that such slide fasteners were being so unfairly imported by the Hermes Leather Company of New York, by the Orion Company, the appellant, by the Naratorg Trading Company, or Nara Trading Company, of Los Angeles, hereinafter respondents, and by other persons, firms, and corporations unknown; that such slide fasteners imitate the appearance of the complainant's product, including all improvements in the same made by the complainant from time to time, and that the said articles are being sold in the markets of the United States as and for the product of complainant; that said products are being sold far below the cost of production of the complainant's products, and that it will be forced to abandon its business if such unfair practices continue; that the said practices constitute unfair methods of competition and unfair acts within the meaning of said section 337,

and, that the tendency thereof is to destroy or substantially injure the complainant's business; that the complainant has no other remedy, because the remedy by injunction is insufficient to protect its business. The complaint prayed an order forbidding entry of such slide fasteners temporarily, and for other relief.

The President, upon the filing of said complaint, directed that the Secretary of the Treasury forbid entry of slide fasteners of the character of those manufactured by the Hookless Fastener Company, and described in said complaint and patents referred to therein, except under bond, as provided by said section 337 (f), 19 USCA § 1337 (f), until an examination by the United States Tariff Commission had been concluded. This action was taken.

The complaint of Hookless Fastener Company was under oath. On the 17th day of September, 1932, the Orion Company, the appellant here, filed sworn answer to the complaint, denying each and all of the allegations contained therein.

A large number of American manufacturers of hand bags equipped with slide fasteners filed a petition to intervene as parties complainant, on or about September 21, 1932. A motion was made by the Hermes Leather Company, on September 22, 1932, for a dismissal of the proceedings, or, in the alternative, to strike out certain portions of the complaint. Later the Hermes Leather Company filed its sworn answer to the complaint, alleging, in general, that it was operating under a patent issued by the United States Patent Office, No. 1,639,392, of August 16, 1927, taken out by one R. Wittenberg, and that its goods sold in the United States were manufactured in conformity with said patent.

Hearings were begun before the United States Tariff Commission on October 26, 1932, at which hearing it appeared, from a preliminary statement made by the Commission, that on September 21, 1932, the respondent Naratorg Trading Company had informed the Commission it was no longer interested in the importation of slide fasteners, and was therefore not interested in the investigation. It also appeared from this statement that the preliminary motion hereinbefore mentioned of the Hermes Leather Company had been denied on September 23, 1932, prior to the filing of its answer.

At the hearing before the Commission, which was extensive, it appears that the Hermes Leather Company called and exam-

ined witnesses. The appellant here, the Orion Company, offered no testimony and took no part in such proceedings, further than to file a brief.

At the conclusion of the hearings, the United States Tariff Commission made certain findings and recommendations to the President, in conformity with the provisions of said section 337. The substance of the findings is that the various United States patents which were introduced in evidence and relied upon by the respective parties were treated as valid, for the purposes of the investigation, by the Commission; that importations have been made of slide hookless fasteners which are in infringement of certain of the patents owned by the complainant and relied upon by it herein; that the constitutionality of said section 337 has been judicially upheld; that no infringement of the complainant's trade-marks has been established; that underselling has been shown and that it, if not stopped, will injure the industry of the manufacturing of slide fasteners in the United States; that no slide fasteners had been imported into the United States, made in conformity with the Wittenberg patent, No. 1,639,392; that slide fasteners had been imported, claimed, and marked as having been made in conformity therewith, but which were not so made; that such untrue marking deceived purchasers in the United States, and that such fasteners were sold for less than those made by complainant; that such practices constituted unfair methods of competition and have injured, and, if permitted to continue, will continue to injure, the slide fastener industry of the United States.

The Commission, in conclusion, recommended to the President that he direct the Secretary of the Treasury to exclude from entry into the United States slide fasteners which were being so imported, and which were in violation of the said patents of the complainant, specifically indicating by the language of certain claims of these patents the particular devices which were to be so excluded.

The respondent the Hermes Leather Company did not perfect its appeal. The present appellant, the Orion Company, filed its appeal and now asks a review of said findings and recommendations, under the provisions of said section 337 (c), 19 USCA § 1337 (c).

Said section 337 (19 USCA § 1337) appears in a marginal note.[1]

---

[1] "Sec. 337. Unfair practices in import trade.

"(a) *Unfair methods of competition declared unlawful.* Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are hereby declared unlawful, and when found by the President to exist shall be dealt with, in addition to any other provisions of law, as hereinafter provided.

"(b) *Investigations of violations by commission.* To assist the President in making any decisions under this section the commission is hereby authorized to investigate any alleged violation hereof on complaint under oath or upon its initiative.

"(c) *Hearings and review.* The commission shall make such investigation under and in accordance with such rules as it may promulgate and give such notice and afford such hearing, and when deemed proper by the commission such rehearing, with opportunity to offer evidence, oral or written, as it may deem sufficient for a full presentation of the facts involved in such investigation. The testimony in every such investigation shall be reduced to writing, and a transcript thereof with the findings and recommendation of the commission shall be the official record of the proceedings and findings in the case, and in any case where the findings in such investigation show a violation of this section, a copy of the findings shall be promptly mailed or delivered to the importer or consignee of such articles. Such findings, if supported by evidence, shall be conclusive, except that a rehearing may be granted by the commission and except that, within such time after said findings are made and in such manner as appeals may be taken from decisions of the United States Customs Court, an appeal may be taken from said findings upon a question or questions of law only to the United States Court of Customs and Patent Appeals by the importer or consignee of such articles. If it shall be shown to the satisfaction of said court that further evidence should be taken, and that there were reasonable grounds for the failure to adduce such evidence in the proceedings before the commission, said court may order such additional evidence to be taken before the commission in such manner and upon such terms and conditions as to the court may seem proper. The commission may mod-

On October 23, 1933, the complainant filed a motion herein to dismiss the appeal of the Orion Company, stating as grounds for said motion that the appellant was neither an *importer* nor a *consignee,* which, alone, under said section 337 (c), 19 USCA § 1337 (c), are given the right to an appeal from the findings of the Commission. This motion was denied on November 6, 1933. The point is again brought to our attention by counsel for the complainant, in their brief filed herein, and requires decision as a preliminary to a discussion of our views on the merits of the controversy.

By the pleadings a direct issue was made, the complainant alleging that the Orion Company was an importer, and the respondent denying the same. In its brief, filed here, the appellant insists that there is no evidence of any kind in this record to the effect that the appellant ever imported any of the slide fasteners in issue here, and argues therefrom that no embargo order should have been issued which destroys their supply of foreign made slide fasteners. On its side, Hookless Fastener Company contends that there is nothing in the record which shows that the Orion Company is an *importer* or *consignee,* and argues therefrom that this appeal must, accordingly, be dismissed.

It would seem that the complainant, having pleaded that the Orion Company was an importer or consignee of the slide fasteners in issue, and having introduced no evidence which shows the contrary, is not in position now to deny that fact and to deprive this respondent of the right to appeal.

There is, however, evidence in the record that, to our minds, substantially shows that the Orion Company was, at or about the time of the hearing before the Commission, engaged in the business of importing and selling foreign slide fasteners such as those manufactured and sold by the complainant. The witness Louis Bromfield, president of the Veramode Bag Company, manufacturers of slide fastener bags, testified that on July 21, 1932, he received a call from a representative of the Orion Company, who offered to sell him slide fasteners. On the same date his company received a letter from the Orion Company, quoting prices on slide fasteners at $16.92 per gross, "delivered in New York; terms: 3%—60 day letter of credit against documents at Hamburg." A sample of the goods was sent with the letter and was introduced in evidence before the Commission. On August 5th an order was entered, and was acknowledged and accepted on August 5th with directions to "make your check payable to the Bush Service Corporation, and send same to them at 100 Broad Street, City." Afterwards, a representative of the company came to Bromfield and insisted that the goods be paid for in cash, in advance, and before delivery. This was refused and the goods were not delivered.

A witness, Moses Spector, connected with Resnick Brothers, manufacturers of ladies' hand bags, testified that within a few months

---

ify its findings as to the facts or make new findings by reason of additional evidence, which, if supported by evidence, shall be conclusive as to the facts except that within such time and in such manner an appeal may be taken as aforesaid upon a question or questions of law only. The judgment of said court shall be final.

"(d) *Transmission of findings to President.* The final findings of the commission shall be transmitted with the record to the President.

"(e) *Exclusion of articles from entry.* Whenever the existence of any such unfair method or act shall be established to the satisfaction of the President he shall direct that the articles concerned in such unfair methods or acts, imported by any person violating the provisions of this chapter, shall be excluded from entry into the United States, and upon information of such action by the President, the Secretary of the Treasury shall, through the proper officers, refuse such entry. The decision of the President shall be conclusive.

"(f) *Entry under bond.* Whenever the President has reason to believe that any article is offered or sought to be offered for entry into the United States in violation of this section but has not information sufficient to satisfy him thereof, the Secretary of the Treasury shall, upon his request in writing, forbid entry thereof until such investigation as the President may deem necessary shall be completed; except that such articles shall be entitled to entry under bond prescribed by the Secretary of the Treasury.

"(g) *Continuance of exclusion.* Any refusal of entry under this section shall continue in effect until the President shall find and instruct the Secretary of the Treasury that the conditions which led to such refusal of entry no longer exist.

"(h) *Definition.* When used in this section and in sections 338 and 340 [sections 1338 and 1340], the term 'United States' includes the several States and Territories, the District of Columbia, and all possessions of the United States except the Philippine Islands, the Virgin Islands, American Samoa, and the island of Guam."

prior to his testifying a representative of the Orion Company called upon him, attempting to sell to him imported foreign slide fasteners. A letter was offered, dated July 12, 1932, and bearing the letterhead of the Orion Company, and addressed to Seco Leather Products, 740 Broadway, West New York, N. J., as follows:

"We are pleased to offer you an automatic slide fastener manufactured in Europe, the selling agency for which we have just acquired.

"The fine quality of our product, its ease in operating, the finesse in appearance plus price, we believe should appeal to you.

"May we inquire if you would be interested in going into this matter with us. Our production is limited and we are therefore desirous of obtaining only a few select accounts.

"If we could know the size and quantity you would use, we are sure to be able to serve you favorably.

"Thanking you for a reply,

"Very truly yours,

"The Orion Company

"HS:GR        By Herman Snyder"

This is substantial evidence that, at the time of the acts complained of by the complainant, the Orion Company was an importer or consignee of slide fasteners. A sample of the slide fastener imported by the Orion Company was before the Commission, as has been heretofore stated, and it will be assumed that it was of the type of fasteners that are involved in the controversy here, and which are affected by the embargo order of the President. Substantial evidence, if evidence in view of the state of the pleadings here is required at all, is all that is required in support of the various findings of the Commission. In re Frischer & Co., Inc., 17 C. C. P. A. (Customs) 494, T. D. 43964.

The same quantum of evidence, in reason, is sufficient to establish the standing of the appellant as an importer or consignee under said section 337 (c).

The appellant first contends that said section 337 is in violation of the Constitution and invalid, on two grounds: First, "that the language contained therein is too vague and indefinite." Second, that it constitutes an unlawful delegation of legislative power to the President.

■ The first contention is based upon the premise that section 337 (a), 19 USCA § 1337 (a), makes unlawful an act which must be a conjunction of "unfair methods of com-

petition" and "unfair acts." We do not, however, so read the subsection. It will be observed that the language is "unfair methods of competition" and "unfair acts" "are hereby declared unlawful." (Italics ours.) Again, in subdivision (e) of section 337 (19 USCA § 1337 (e), the President is authorized to exclude the goods from entry whenever the existence of "any such unfair method or act" shall be established. (Italics ours.) The plain and obvious meaning of this language is to authorize action when either unfair competition or unfair acts exist. In re Northern Pigment Co. (No. 3746) 71 F.(2d) 447, 22 C. C. P. A. (Customs) ——.

■ But it is argued that the terms "unfair methods of competition" and "unfair acts" are so vague and indefinite as to give no indication of the scope and extent of the statute. In support of this position, appellant cites United States v. L. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. Ed. 516, 14 A. L. R. 1045, wherein the Supreme Court held section 4 of the Food Control Act of August 10, 1917, c. 53, 40 Stat. 277, as amended by section 2 of the Act of October 22, 1919, c. 80, 41 Stat. 298, repugnant to the Fifth and Sixth Amendments to the Constitution. This statute, among other provisions, made it unlawful "to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries." A penalty of fine or imprisonment was fixed for a violation of the act. The defendant had been indicted and moved to quash the indictment. The Supreme Court affirmed the action of the District Court (264 F. 218) in quashing the indictment on the theory that the law was vague, indefinite, and uncertain, and fixed no immutable standard of guilt.

We hardly think the present case may be measured by the same standards as were applied in the case just cited. In criminal cases, the accused must be definitely and specifically informed of the charge made against him. In the case at bar, however, a power has been delegated to a fact-finding body to ascertain certain facts which are to be used in the development of a national policy. In such cases, we feel quite certain different principles of law should be held to be applicable. An example of the attitude of the court in such cases is found in the litigation involving the creation of the Federal Trade Commission. Section 5 of the act approved September 26, 1914, c. 311, 38 Stat. 717 (15 USCA § 45), made provision for the Federal Trade Commission and declared its powers. Section 5 of the said act provided that "Unfair methods of competition in commerce

are declared unlawful. * * * Whenever the commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition in commerce," it shall fix a hearing, serve notices on the parties involved, and may make the necessary orders to correct the abuses involved.

In Federal Trade Commission v. Gratz, 253 U. S. 421, 40 S. Ct. 572, 575, 64 L. Ed. 993, this act came before the Supreme Court, and the court said this, speaking through Mr. Justice McReynolds: "The words 'unfair method of competition' are not defined by the statute and their exact meaning is in dispute. It is for the courts, not the commission, ultimately to determine as matter of law what they include. They are clearly inapplicable to practices never heretofore regarded as opposed to good morals because characterized by deception, bad faith, fraud, or oppression, or as against public policy because of their dangerous tendency unduly to hinder competition or create monopoly. The act was certainly not intended to fetter free and fair competition as commonly understood and practiced by honorable opponents in trade."

While that case was decided on the pleadings, one member of the court concurred in the result, and dissenting opinions were filed by two of the justices, strongly contending that the matter should have been considered and decided upon its merits.

In Federal Trade Commission v. Eastman Kodak Co., 274 U. S. 619, 47 S. Ct. 688, 71 L. Ed. 1238, an order had been made by the Federal Trade Commission against the Eastman Kodak Company, ordering it to desist from acts held by the Commission to constitute unfair methods of competition, and, as a preliminary thereto, to divest itself of the ownership of certain laboratories which it had acquired prior to any action by the commission. The Circuit Court of Appeals [7 F.(2d) 994], and afterwards the Supreme Court, affirmed the decree in so far as it required the Eastman Company and its associates to desist from certain agreements or understandings which the Commission thought to be unfair methods of competition, and held that the order, in so far as it required the Eastman Company to sell its laboratories, could not be sustained.

In Re Frischer & Co., Inc., supra, we were called upon to consider section 316 of the Tariff Act of 1922, 42 Stat. 858, 943 (19 USCA §§ 174–180). That section was the prototype of section 337 of the Tariff Act of 1930 (19 USCA § 1337), and is, in substance, the same; the only substantial difference being that the provisions for a writ of certiorari from the Supreme Court, and the provision giving the President a right to make increases of tariff duties, are omitted. In that case, while the question of vagueness or uncertainty was not so specifically raised as it is here, it was nevertheless involved in the case; the contention there being that the statute was so vague as to be unworkable. We discussed that phase of the case in the case cited, and expressed the opinion that the law was workable. We also called attention to the fact there that, if errors were made by the United States Tariff Commission, there was a forum provided in this court in which such errors might be corrected, and stated: "What constitutes unfair methods of competition or unfair acts is ultimately a question of law for the court and not for the commission." Certiorari was denied in that case. Frischer & Co. v. Tariff Commission & Bakelite Corporation, 282 U. S. 852, 51 S. Ct. 29, 75 L. Ed. 755.

After that case was decided, the Frischer Company, not being satisfied with the conclusion, filed its bill in equity in the District Court of the United States for the Southern District of New York, seeking to restrain the collector of customs from excluding certain articles covered by the order of the President. The District Court dismissed the bill because of lack of jurisdiction, holding that the remedy in the United States Court of Customs and Patent Appeals was exclusive. The Frischer Company appealed, and the United States Circuit Court of Appeals of the Second Circuit, in Frischer & Co. v. Elting, 60 F.(2d) 711, affirmed the decree of dismissal. However, the court, while affirming the dismissal, proceeded to discuss the case on its merits. In doing so, the court expressed the view that the terms "unfair methods of competition" and "unfair acts" were general and vague, but were sufficient, basing its judgment upon cases hereinbefore cited, dealing with the powers of the Federal Trade Commission and the United States Shipping Board.

On principle, it is not seen in what respect the statute here involved is more vague and uncertain than others in which delegations of powers have been made to the President and to the Secretary of the Treasury, which have been the subject of recent discussions by this court and by the Supreme Court. Reference is had to Hampton, Jr., & Co. v. United States, 14 Cust. App. 350, T. D. 42030, affirmed in 276 U. S. 394, 48 S. Ct. 348, 72 L. Ed. 624; J. H. Cottman & Co. v. United States, 20 C. C. P. A. (Customs)

344, T. D. 46114; Kleberg & Co. v. United States, 71 F.(2d) 332, 21 C. C. P. A. (Customs) ——, T. D. 46446.

On this phase of the case we conclude that the statute involved is not unconstitutional as being vague and indefinite in its terms. As to the contention that it is in contravention of article 1, section 1 of the Constitution, as an unlawful delegation of legislative power, we conclude that this point has been decided adversely to appellant's contentions in Re Frischer & Co., Inc., supra, a decision which we find no reason to depart from. The differences between the provisions of said section 316 of the Tariff Act of 1922 and section 337 of the Tariff Act of 1930 do not, in our opinion, alter our conclusion reached in that case. See Report Ways and Means Committee on H. R. 2667. Rep. No. 7, 71st Congress, 1st Session, p. 166. The said section 316 is set out at large in a marginal note in the Frischer Case.

An examination of the record made before the Commission discloses that there is substantial evidence therein establishing the facts as found by the Commission. This evidence shows that prior to the filing of the complaint herein, slide fasteners were manufactured in, and imported from, various foreign countries into the markets of the United States, by the respondents and others, which were apparent infringements upon the slide fasteners manufactured by the complainant under said patents owned by it; that other imported slide fasteners, in many instances, were marked as having been manufactured under United States Patent No. 1,639,392, but which were, in fact, not manufactured in conformity with the specification of said patent, but with the specifications of certain of the said patents of the complainant; that the said slide fasteners were being sold by said importers in the markets of the United States at prices less than the price for which they could be produced and sold by the complainant; and that the business of the complainant and the intervenors herein was being destroyed by such practices. It further appears therefrom that said goods were being sold by retailers in the United States, and represented to be the goods of the complainant, and that the business of the complainant is being operated efficiently and economically.

Does this state of facts, as a matter of law, constitute unfair methods of competition or unfair acts within the meaning of said section 337? The Commission is of the opinion that it does. On the other hand, the appellant contends that it does not; that the facts so established, if they be established, show an infringement of the patent rights of the complainant, only; that such an infringement does not, in law, constitute unfair methods of competition or unfair acts; that the United States Tariff Commission has no power or authority to determine whether there has, or has not, been such an infringement; that the sole power to determine whether a patent right has been so infringed rests in the constitutional courts of the United States given that jurisdiction by the Constitution.

In Re Frischer & Co., Inc., supra, in discussing the powers and functions of the United States Tariff Commission, we said:

"Nowhere in the act creating the United States Tariff Commission is there the slightest intimation that it was the purpose to confer jurisdiction upon it to pass upon the validity of patents, matters which are well understood to be cases and controversies within the meaning of section 2 of article 3 of the Constitution. The statute provides, section 316 (c), Tariff Act of 1922 [19 USCA § 176], that the findings of the commission, 'if supported by evidence, shall be conclusive.' It would hardly be contended that a finding by the commission that a certain patent was or was not valid would be considered as res adjudicata. It may well be doubted whether the Congress could confer any such jurisdiction upon this administrative commission—certainly, it has not done so. The statement of Mr. Justice Curtis in Murray's Lessee v. Hoboken, etc., 18 How. 272, 284 [15 L. Ed. 372], is pertinent:

" 'To avoid misconstruction upon so grave a subject, we think it proper to state that we do not consider Congress can either withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty; nor, on the other hand, can it bring under the judicial power a matter which, from its nature, is not a subject for judicial determination.'

"In short, when the complainant introduced its certified patents in evidence they should have been treated as prima facie evidence of their validity. Lehnbeuter v. Holthaus, 105 U. S. 94, 96 [26 L. Ed. 939]; Fenton Co. v. Office Spec. Co., 12 App. D. C. 201, 216; Consol. Con. Co. v. Hassam Pav. Co. [C. C. A.] 227 F. 436; R. R. Sup. Co. v. Hart Steel Co. [C. C. A.] 222 F. 261, 274. If no such patents had been in fact issued, or if they had by their terms expired, or if some court of competent jurisdiction, whose

judgment would be binding upon the commission, had held them to be invalid, and such facts had been shown, these circumstances might have been considered by the commission, if the existence of the patents was material to the inquiry. This, however, in our judgment, was as far as the commission could legally go in this respect. As no denial was made by respondents as to the issuance of the patents in question and no attack made upon them except that they were improvidently issued, they should have been treated as valid by the commission."

The Commission, in the case at bar, followed the rule announced in the Frischer Case, and treated all United States patents introduced in evidence and involved in the determination of the matter as valid. In this, the Commission followed the correct practice.

The complainant called and examined, before the Commission, expert witnesses who testified that the imported slide fasteners were made according to the specifications and in conformity with the claims of the United States patents owned by the complainant, and not in conformity with the specification and claims of the United States Patent No. 1,639,-392, owned by one of the respondents. There was no showing to the contrary. From this testimony, and from an examination of the samples, the Commission decided that the slide fasteners were being imported, made in conformity with the specifications and claims of the complainant's patents, and not in conformity with the specification and claims of any United States patent owned by the respondents.

Such a finding of fact does not constitute a trial of the validity of any of said patents or an ascertainment of infringement or non-infringement, such as is the case when such issues arise in equity in one of the District Courts, or the Supreme Court of the District of Columbia. The issues of validity or infringement are not involved, but, rather, the ascertainment of a fact which may be the basis of a finding of unfair methods of competition or unfair acts, which thereafter may be the basis of an order by the President, correcting the unfair methods or acts.

In considering this, care must be exercised to have in mind the objects for which this section was enacted. It appears as a part of the Tariff Act of 1930 (46 Stat. 590, 19 USCA § 1001 et seq.), which is, as its title states, "An Act To provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes." It is incorporated in the same act

with provisions for countervailing duties (section 303 [19 USCA § 1303]), bonded manufacturing warehouses (section 311 [19 USCA § 1311]), provisions for the creation and powers of the United States Tariff Commission, and the flexible tariff provisions (sections 330 to 341 [19 USCA §§ 1330–1341]). In force, concurrently, is the Anti-Dumping Act 1921, of May 27, 1921, 42 Stat. 11 (19 USCA §§ 160–173).

These various provisions were intended to shelter, protect, and conserve the industries of the United States, as well as to provide revenues. The obvious intent of said section 337 (19 USCA § 1337) was not to confer upon the United States Tariff Commission, or upon this court, the power to determine conflicting property rights. It was made the duty of the Commission to gather information and facts which should be furnished to the President, who was authorized, in pursuance of a well-developed and well-understood national policy, expressed in the acts of Congress, if he was satisfied that such unfair methods or acts in importation existed, to prohibit such imports from entering the country. In so doing, the legislative power of the Government, through the United States Tariff Commission and the President, was regulating the foreign commerce of the country along lines of a general policy expressed by it.

In performing this function the Commission was to be kept within the law by the medium of an appeal to this court.

So long as such regulation was within constitutional limitations, as we have seen it was, the wisdom of the methods provided by the Congress is a political, not a judicial, question. The importer has no right to complain as to the operation of the machinery, for the act of importation, even to our citizens, is not a vested right, but an act of grace. Buttfield v. Stranahan, 192 U. S. 470, 24 S. Ct. 349, 48 L. Ed. 525.

Assuming, then, the power of the Commission to proceed in the manner which it did, did the facts found by it constitute proof of unfair methods of competition or unfair acts?

In Re Frischer & Co., Inc., supra, after an examination of the record, we found the following facts to be shown: "We have examined the voluminous record with care and are satisfied that there is substantial evidence in support of each finding of the commission. This evidence disclosed that the industry conducted by the complainant, Bakelite Corporation, was efficiently and economically oper-

ated; that the importers, appellants, were importing materials and goods and selling them to retailers in the United States, which were identical with the goods of complainant and made by the processes described in complainant's patent 1424738; that these goods were not marked, except as to their country of origin; that these goods were being sold by said dealers generally throughout the United States as 'Bakelite'; that they were called and billed as such; that they were sold at much less than the cost of complainant's product; that such practices have greatly reduced the sales of the complainant's Bakelite and have the tendency and effect of destroying and substantially injuring the said industry; that the complainant uses the name 'Bakelite' as its trade-mark and has duly registered the same, which registration is in full force and effect; that the complainant, Bakelite Corporation, has spent large sums of money in advertising its product and its trade name of 'Bakelite' until, as a result thereof, the name 'Bakelite' fully identifies such products as the manufactures of said complainant; that the said practices of dealers is destroying the usefulness of such trade name and taking from the said complainant the legitimate profits which it is entitled to make because of its said expenditures; that no adequate remedy exists by suits in law or equity; and that the only method which will save the industry from destruction is an embargo."

We there held these facts to show unfair methods of competition. Little, if any, difference exists between that case and the one at bar, and we think it is decisive here. Many authorities were cited by us there in support of our conclusion, and these need not be here repeated.

Since our decision in Re Frischer & Co., Inc., supra, the Supreme Court has handed down its opinion in Federal Trade Commission v. Raladam Co., 283 U. S. 643, 51 S. Ct. 587, 590, 75 L. Ed. 1324, 79 A. L. R. 1191. This case dealt with section 5 of the Federal Trade Commission Act, c. 311, 38 Stat. 717, 719 (15 USCA § 45), which provides, in part, that "unfair methods of competition in commerce are declared unlawful."

In discussing the meaning of the phrase "unfair methods of competition," the Supreme Court, speaking through Sutherland, Justice, called attention to the fact that the words "unfair competition" had a well-settled meaning at common law, and that to obviate a narrow construction, the words "unfair methods of competition" were substituted by the Congress. As to this term, the court said: "It belongs to that class of phrases which does not admit of precise definition, but the meaning and application of which must be arrived at by what this court elsewhere has called 'the gradual process of judicial inclusion and exclusion.' * * * The question is one for the final determination of the courts and not of the Commission."

In the very recent case of Federal Trade Commission v. Algoma Lumber Co., 291 U. S. 67, 54 S. Ct. 315, 320, 78 L. Ed. 655, the Supreme Court considered the use by the respondents of the words "California white pine," to describe lumber, logs, or other forest products made from the pine species known as *Pinus ponderosa*. The question before the court was whether the use of this designation constituted unfair methods of competition, in view of the fact that white pine lumber was shown to be lumber of a very high quality, and that consumers were liable to be misled by the use of said designation. The court, speaking through Cardozo, Justice, was of the opinion that the Commission did not abuse its discretion in reaching the conclusion that the designation should be changed, and that no name short of the excision of the word "white" would give adequate protection. The court remarked, among other things: " * * * Fair competition is not attained by balancing a gain in money against a misrepresentation of the thing supplied. The courts must set their faces against a conception of business standards so corrupting in its tendency. The consumer is prejudiced if upon giving an order for one thing, he is supplied with something else. Federal Trade Comm'n v. Royal Milling Co., 288 U. S. 212, 216, 53 S. Ct. 335, 77 L. Ed. 706; Carlsbad v. W. T. Thackeray & Co. (C. C.) 57 F. 18. In such matters, the public is entitled to get what it chooses, though the choice may be dictated by caprice or by fashion or perhaps by ignorance. * * * "

It will be borne in mind that many of the decisions cited in the Frischer Case, supra, and here, were rendered under statutes intended to prevent unfair methods of competition in the internal commerce of the country. Much more reason appears for the prevention of such practices in the case of importations from foreign countries. In this latter class of cases, manufactured products, produced in a foreign country where the producer is beyond the control of the courts of the United States, are imported into this country. Up until the time when they are released from customs custody into the commerce of this country, no opportunity is pre-

sented to the manufacturer of the United States to protect himself against unfair methods of competition or unfair acts. After the goods have been so released into the commerce of the country, the American manufacturer may assert his rights against any one who has possession of, or sells, the goods. However, this method of control must be, and is, ineffective, because of the multiplicity of suits which must necessarily be instituted to enforce the rights of the domestic manufacturer. This phase of the matter obviously was in the minds of the Congress at the time of the preparation of said section 337 (19 USCA § 1337).

When section 316 was being incorporated into the Tariff Act of 1922 (19 USCA §§ 174–180), the Senate Finance Committee, in reporting the bill to the Senate, incorporated this illuminating language as to the purposes of the embargo provision of that section: "The provision relating to unfair methods of competition in the importation of goods is broad enough to prevent every type and form of unfair practice and is, therefore, a more adequate protection to American industry than any anti-dumping statute the country has ever had. (Senate Report No. 595, p. 3, 67th Cong. 2nd Session.)"

At the time H. R. 2667 was being considered, the United States Tariff Commission called the attention of the Ways and Means Committee to the difficulties had in the administration of sections 315, 316, and 317 of the Tariff Act of 1922 and made this suggestion:

"Importance of Commission's Jurisdiction of Patent Infringements.

"Existing law, apart from section 316, is wholly inadequate to protect domestic owners of patents from violation of their patent rights through the importation and sale of infringing articles. Such infringing articles may be and are imported in large quantities and distributed throughout the United States. The owner of a patent, seeking to protect himself, is confronted with the necessity of proceeding against individual wholesalers or retailers. The resulting multiplicity of suits imposes an impossible burden. Stoppage of importation of infringing articles through an order of exclusion from entry is the only effectual remedy. The jurisdiction of district courts and the scope of any decree issued by them do not extend to the importation or exclusion of imported merchandise from entry into the United States. Section 316, therefore, as construed by the Tariff Commission in its findings now before the Court of Customs Appeals for review, affords an exclusive remedy. (Vol. 17, Supp. to Tariff Readjustment Reports on Tariff Bill of 1929, page 10667.)"

Thereafter, the committee reported to the House, in part, as follows: "The only change made by the section over existing law is the elimination of the provision which authorized the President to impose such additional duties not in excess of 50 per cent or less than 10 per cent of the value of the article imported in violation of the section as would offset the unfair method or act employed. The committee feels that this provision should not be retained for the reason that the imposition of penalty duties to offset violations is entirely inadequate to prevent further violations. The effective remedy is to exclude from entry the articles concerned in the violation. (Report Ways and Means Com. on H. R. 2667, Rept. No. 7, 71st Congress, 1st Session, p. 166.)"

It is brought to our attention by the appellant that the Tariff Act of 1922 contained section 526 (19 USCA §§ 141–143). That section provided, in part:

"Sec. 526. (a) It shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise, or the label, sign, print, package, wrapper, or receptacle, bears a trade-mark owned by a citizen of, or by a corporation or association created or organized within, the United States, and registered in the Patent Office by a person domiciled in the United States. * * *

"(b) Any such merchandise imported into the United States in violation of the provisions of this section [section 141 of this title] shall be subject to seizure and forfeiture for violation of the customs laws.

"(c) Any person dealing in any such merchandise may be enjoined from dealing therein within the United States or may be required to export or destroy such merchandise or to remove or obliterate such trademark and shall be liable for the same damages and profits provided for wrongful use of a trade-mark, under the provisions of such Act of February 20, 1905, as amended [sections 81 to 109, inclusive, of Title 15]."

When said H. R. 2667 of 1929 was being considered, a similar section, 526, was incorporated therein. When the bill went to the Senate, the Finance Committee added certain amendments to said section, extending the same to include in its scope articles marked or labeled in accordance with the provisions of section 4900 of the Revised Statutes, relating to notice of patent under the laws of the United States. These amendments were rejected in conference, the conferees report-

ing that they desired to make certain that the provisions relative to trade-marks "shall not be extended to the case of merchandise bearing American patent notice." H. R. Report No. 1892, 71st Congress, 2d Session, p. 117.

The opinion of this court in the Frischer Case was handed down on April 10, 1930. Said conference report was filed on April 28, 1930.

From these facts, it is argued that if the conferees knew of the decision of this court in the Frischer Case when said report was filed, their action should be taken as a repudiation of the theory that embargoes should be employed to control the importation of patent infringing goods; such remedies being intended to apply only to trade-mark violations as provided for in said section 526.

The intent of the Senate Finance Committee in amending said section 526 was to compel the manufacture in the United States of goods covered by United States patents. It had no other object. Senate Report No. 37, p. 75. H. R. 2667, 71st Congress, 1st Session. This purpose also appears in the debate on the subject. Cong. Rec. 71st Congress, 1st Session, part 4, pp. 3871–3876, 3889–3906, 4497–4498. Doubtless, it was seen by the conferees that to so amend the section would prevent citizens of the United States, owning United States patents, from manufacturing their goods, under such patents, in foreign countries, and afterward importing the same, and the amendments were not agreed to. It nowhere appears from these proceedings that it was the legislative intent to exclude violations of patent or trade-mark rights from the scope of said section 337.

Finally, it is said that an embargo may issue restraining goods from entry which are, in fact, not infringements of United States patents, because of the invalidity of such patents. This, it is argued, leads to the conclusion that no such power was intended to be conferred by said section 337. In support of this, our attention is called to the fact that since the temporary embargo was issued herein, the United States Circuit Court of Appeals of the Second Circuit, in Hookless Fastener Co. v. Prentice Mfg. Co., 68 F. (2d) 940, has held to be invalid, claim 6 of Patent No. 1,566,996, the basis of Recommendation (n) of the Commission herein.

The same patent and claim were before the District Court for the Western District of Pennsylvania in Hookless Fastener Co. v. Lion Fastener, Inc., 7 F. Supp. 87, decided April 5, 1933, and by which decision said claim No. 6 was held to be valid. An appeal is now pending in that case in the Circuit Court of Appeals for the Third Circuit. The legal status of that claim may, therefore, not be said to be established.

The fact that such invalid patents may constitute the bases of embargoes by the President does not lead to the conclusion suggested. The Commission and the President, both may, in the first instance, assume the validity of patents duly issued and certified by the United States Patent Office. Upon their invalidity being declared by legal authority, it is the duty of the President, under said section 337 (g), 19 USCA § 1337 (g), to correct any order issued and based thereon.

We find no error in the findings of the United States Tariff Commission. The said findings are affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.

GARRETT, Associate Judge (specially concurring).

I am compelled, as a matter of reason, to agree that the doctrine upheld by the majority in the case of Re Frischer & Co., Inc., et al. v. United States, 17 C. C. P. A. (Customs) 494, T. D. 43964 (to which I respectfully dissented), is controlling of the issue presented in the instant case. I do not, however, agree to all forms of expression, nor to all assertions of the present majority opinion. I shall not attempt the fruitless task of detailing the matters upon which I disagree, since in the main they are matters of form rather than of substance.

I do feel impelled to state that, in my judgment, the issues before us do not require any declaration by us as to the duty of the President in the event some court of competent jurisdiction declares invalid a patent upon which an embargo has been predicated. Our jurisdiction under section 337 (19 USCA § 1337) extends alone to a review of the report of the Tariff Commission, and that upon questions of law only, and we have nothing to do in the instant proceeding with defining the President's duties. Under the section the President may act upon the report of the Tariff Commission, or he may act independently of it. I am unable to see wherein it is incumbent upon this court, under the limited duty which the statute devolves upon it, to essay a declaration as to what the duty of the Executive may be under some possible future condition.